# March v. England.

*Bill in Equity to Quiet Title to Land, and Remove Cloud.*

1. *Objection to certified copy of registered deed.*—An objection to the admission of a transcript of a registered deed as evidence, "because it is insufficient and illegal," is a general objection to the admissibility of the transcript, and does not raise any specific objection to the validity or legal effect of the deed.

2. *Execution of deed by trustee under power; registration of acknowledgment and consent.*—When a married woman's consent to the execution of a deed by her husband, as trustee for her and her children, is indorsed on the deed after its execution, and is acknowledged by her before a proper officer, it becomes a part of the deed, as if incorporated in it; and the deed and consent, each properly acknowledged and certified, being duly recorded within twelve months (Code, § 2154), a certified copy is competent and sufficient evidence of the indorsed consent, as well as of the deed.

3. *Same; sufficiency of consent.*—Where lands are conveyed to the husband, in trust for the wife, with remainder to their children; and he is authorized to sell and convey, with the *written consent* of the wife, and required to re-invest the proceeds of sale in other property, to be held on the same trusts; a written acknowledgment by the wife, indorsed on the deed of the husband as trustee after its execution, that the sale was made with her full consent, and at her written request, which acknowledgment is duly certified (Code, § 2215), shows a sufficient execution of the power.

4. *Bill to quiet title; when purchaser can not maintain.*—When the bill "discloses no more than an unquiet and unfounded apprehension as to the validity of" the complainant's title to lands of which he is in possession, "and a false and clamorous assertion of a hostile title" by the defendants, founded on supposed defects in a deed executed by their trustee to the complainant's vendor, "a court of equity will not interfere to quiet the one, or to silence the other."

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. H. AUSTILL.

The original bill in this case was filed on the 14th May,

1877, by William March, against Mrs. Livia W. England and her children ; and sought to quiet the complainant's title to certain lands, of which he was in possession, and which were sold and conveyed to him by W. D. Talbot and wife, by deed dated the 24th April, 1876. The lands had belonged to one J. H. Snow, and were by him sold and conveyed, by deed dated the 15th January, 1869, to William G. England, the husband of Mrs. Livia W. England, as trustee for his wife and children, on the recited consideration of $9,500. By the terms of this deed, the lands were conveyed "to the said William G. England, trustee, and his heirs forever, but in trust, nevertheless, for the sole and separate use and benefit of his wife, Livia W. England, and her children by her husband, W. G. England, begotten, now living, or that may be hereafter born ; but the said William G. England shall have the power to sell said premises, with the written consent of his said wife, and re-invest the proceeds in other lands, on the same trusts, terms and conditions herein expressed ; the money hereby paid for said premises being funds arising from the sale of certain trust property described in certain trust deeds recorded in Perry county, to which reference is made ; and should the said William G. England die before his wife, leaving her surviving, she is to be and become trustee of said premises, for herself and her children by said England, and for her and their sole use and benefit ; and in that event, she, the said Livia, is to have the full power to sell said premises, and re-invest the proceeds upon the same trusts as herein before expressed ; and her deed, after the death of said William G. England, shall give the purchaser a good title." This deed contained full covenants of warranty of title and against incumbrances, except a mortgage which said Snow and wife had previously executed to Mrs. Roxanna Dargan ; "which mortgage debt," the deed recited, "the said W. G. England is, by the terms of the purchase, to pay off, but is to pay off the same as trustee for his said wife and children."

On the 1st November, 1869, William G. England, "as trustee for his wife and her children by him," sold and conveyed the lands to S. A. Thompson, on the recited consideration of $9,500. This deed contained covenants of warranty of title and against incumbrances, except the mortgage to Mrs. Dargan, on which it was recited there was then due $4,680, "which the said Thompson, by the terms of said purchase, is to pay off" ; and it was acknowledged by the said England, on the 27th November, 1869, before a notary public, whose certificate of the acknowledgment, in due form, was indorsed on it. On the 15th of March, 1870, Mrs.

[March v. England.]

England signed an instrument of writing, which was also indorsed on the deed, in these words : "Know all men by these presents, that I, Livia W. England, wife of W. G. England, the vendor in this deed, do hereby acknowledge that he, the said W. G. England, sold the premises described in this deed with my full consent, and at my written request ; and I hereby ratify and confirm said sale to S. A. Thompson, the purchaser, and covenant with him, that neither I, nor my heirs, shall ever disturb him or his heirs, or make any claim to the land, further than it may be necessary to do so to collect the purchase-money of said Thompson, if necessary. Witness my hand and seal, " &c. To this instrument was appended a certificate by a notary public, dated the 26th March, 1872, stating that Mrs. England, who was known to him, appeared before him that day, " and acknowledged, that, being informed of the contents of the conveyance, she executed the same voluntarily on the day the same bears date. "

To secure the payment of the notes given for the purchase-money, Thompson executed a mortgage on the lands, with power of sale, to England as trustee ; and on the 30th January, 1871, said Thompson and wife conveyed the lands to W. D. Talbot, on the recited consideration of $10,000. This deed also contained the usual covenants of warranty, except as against the mortgage to Mrs. Dargan, whose debt was then said to be reduced to $2,900, " which said Talbot is to pay off, and thereby redeem the property. " Afterwards, England transferred and assigned to said Talbot, by writing indorsed on it, the mortgage given by Thompson on the lands ; but the assigment is without date. On the 24th April, 1876, said Talbot and wife conveyed the lands to the complainant in this suit, on the recited consideration of $2,000 ; and on the 4th May, 1876, said Talbot also transferred and assigned to him the said mortgage given by Thompson, stating in the assignment that the debt was paid. Talbot also paid off the mortgage debt to Mrs. Dargan, and took an assignment of that mortgage to himself, as shown by the entry on the record, in these words : " W. D. Talbot now owns the property described in this mortgage, and has paid the mortgage debt, which is extinguished ; but the mortgage deed has been assigned to him as a muniment of title, April 5th, 1871. "

The bill alleged the execution of all these conveyances, as above set out, and said that the originals, or copies thereof, would be produced on the hearing ; but they were not made exhibits to the bill. The bill alleged, also, " that the complainant, and those through whom he holds the title to the

[March v. England.]

said lands and premises, have had the quiet and peaceable possession thereof since the 1st November, 1869 ; that he has, through assignments and payments, made either by himself or his assignors, become invested with all the rights, titles, estate and property therein, of the said Mrs. R. Dargan, J. H. Snow and wife, S. A. Thompson and wife, and Mrs. England and her children, and is advised that his title is good and sufficient " ; that he had offered the property for sale, but was unable to negotiate a sale at any reasonable price, because of the claim and assertion of a hostile title in themselves by Mrs. England and her children, under the deed from said Snow and wife to W. G. England, since deceased. The prayer of the bill was, that the complainant might be quieted in his possession and title to the lands; " that the equity of redemption in any and all the parties may be foreclosed, and decreed to be in him, in all of said lands and premises ; that he be decreed to have the right and title of all of said defendants conveyed to him in strict foreclosure of all of said mortgages ; or that the said lands shall be sold to satisfy and pay the amount or sums of money which have been paid by him and those who are or were his assignors or grantors, for his benefit ; or that said defendants shall be adjudged and decreed to have no reason, grounds, nor rights, to doubt or call in question his title to the said premises as against them, " &c ; and for other and further relief.

Answers on oath were waived. Mrs. England filed a separate answer. As to the conveyance by her deceased husband to Thompson, and her acknowledgment indorsed thereon, she thus answered : " She admits that on the 1st November, 1869, her then husband, W. G. England, executed individually what purported to be a conveyance of said property to S. A. Thompson, which expresses on its face that the consideration was $9,500 ; but she knows nothing about the true consideration of such purchase, and denies that said conveyance was made by her written consent, or by her written request. Said sale was made, and said conveyance executed, by her husband alone, and on his own responsibility, and without any authority from her, either verbal or written, and without her knowledge or consent, and against her wish. " As to the acknowledgment indorsed on said deed, " which sets forth, in effect, that said W. G. England sold said property with the consent of this respondent, and at her written request, and that she had satisfied and confirmed the same ; this respondent denies that she gave such consent, or made such written consent. Whether or not she made such acknowledgment, she can not say, but

she has no recollection of so doing. She frequently signed papers for her husband; and she recollects that on one occasion he came home with Mr. Meslier" [the name of the notary whose certificate was appended to the acknowledgment], "and told her he wanted her to sign that document; and she did so, in the presence of Mr. Meslier, without reading it, or knowing what it contained. Whether or not the paper so signed was the instrument mentioned" [her acknowledgment], "she does not know; but, even if she did make such acknowledgment, which she has no recollection of doing, she is advised that it does not bind her, and could not make good and valid the void title previously made by her husband, and that her interest in said property could not be thus divested." She admitted the due execution of the other conveyances, but insisted that they conveyed no title as against her and her children; insisted, also, that the mortgages, having been satisfied and cancelled on the payment of the secured debts, could not be set up as valid for any purpose; and she prayed that her answer might be taken as a cross-bill, and that her rights in the property, under the deed to her husband as trustee, might be established and declared by the decree of the court. A similar answer was filed by the other defendants, which they also prayed might be taken as a cross-bill.

The note of the testimony submitted on the part of the complainant, as copied in the transcript, is thus stated: "1. Original bill. 2. Answer to cross-bill, and exhibits thereto. (The exhibits of deed from England to Thompson is objected to by counsel of respondent, and objection is especially made to what purports to be an acknowledgment by Mrs. England, dated March 15, '70, and to the certificate of G. Meslier, dated March 26, '70, because they are not properly proven, and are illegal evidence.)  .   .   .   7.   The certified copy of a deed from England and wife, filed for record April 4th, '70, to Thompson. (Objected to by counsel of respondent, as insufficient and illegal. Counsel for respondent objects to what purports to be an acknowledgment by Mrs. England, dated March 15, '70, and to the certificate of G. Meslier, dated March 26, '70, as testimony in the cause.)" The documents referred to, as copied twice in the record, do not contain any certificate or memorandum showing when they were recorded, except these words written on the margin of the transcript, "Received in office for record April 4th, 1870," which are not signed; and the certificate of the probate judge, appended to the transcript from his office, states that the transcript is a "full, true, and correct copy of a certain deed of conveyance from W. G. England, trustee,

to S. A. Thompson, as the same appears of record in Deed Book No. 27, " &c.

On final hearing, on pleadings and proof, the chancellor held that the mortgages were satisfied and discharged, and could not be set up for any purpose by the complainant; and that the deed from W. G. England to Thompson, with the subsequent acknowledgment signed by Mrs. England, was not a valid execution of the power, and did not pass the trust estate; citing to this point the cases of *Wright v. Wakeford*, 17 Vesey, and *Bateman v. Davis*, 3-4 Madd. Ch. He therefore dismissed the bill and cross-bill, " that the parties may first try titles at law. " From this decree the complainant appeals, and here assigns it as error.

ALEX. McKINSTRY, for appellant.

D. P. BESTOR, *contra*. (No briefs on file.)

BRICKELL, C. J.—Acknowledgments, or proof of the execution of conveyances, may be taken by a notary public, and several other officers named in the statute.—Code of 1876, § 2155. The acknowledgment of execution proceeds from the party granting or conveying, and the proof of execution from subscribing witnesses. The registration of conveyances of real estate, in the office of the judge of probate of the county in which it is situate, is authorized; and when made, either upon an acknowledgment, or proof of execution, duly certified, the conveyance becomes admissible evidence, without further proof, in any of the courts of this State. Or, if it appears to the court that the original conveyance has been lost or destroyed; or, if the party offering a transcript from the registration, duly certified, has not the control or custody of the original, the transcript is admissible in its place.—Code of 1876, § 2154.

The chapter of the Code devoted to conveyances and their registration, and which contains the provision to which we have referred, as to the mode of proving them, also provides, that " when the consent of a third person to the execution of a power is requisite, such consent must be expressed in the instrument by which the power is executed, or must be certified in writing thereon; in the first case, the instrument, and in the second the writing, must be signed by the party whose consent is required."—Code of 1876, § 2215.

The appellant offered in evidence a certified transcript from the registration of the deed from England, the trustee, to Thompson, and of the consent of Mrs. England thereon

indorsed. To its introduction, the appellees objected, because it was "*insufficient and illegal.*" The objection was general, not specifying any particular ground. The particular grounds of objection now specified are, that as the instrument by which the consent of Mrs. England was manifested, was executed subsequent to the completion of the sale and execution of the conveyance from the trustee to Thompson, it was not in execution of the power of sale with which the trustee was clothed, and does not render valid the conveyance he executed. This objection, if true in point of fact, is addressed to the effect of the instrument, rather than to its admissibility as evidence, and is reserved for future consideration. The next point of objection is, that its execution by Mrs. England should have been proved otherwise than by the certificate of her acknowledgment of the execution, made before the notary public. It is not now, and does not appear to have been in the court below, a ground of objection, that the original was not produced, or its loss or destruction shown, or that the appellant had control and custody of the original. If this ground of objection had been distinctly made in the court below, it may be that the appellant could have obviated it; and the opportunity of obviating it certainly should have been afforded him.

Whether the answer of Mrs. England contains an admission of the execution of the instrument, as was supposed by the chancellor, and, if it does, whether such an admission is evidence against her co-defendants, we do not propose to consider. Confining the parties to the objection made to its admissibility—that its execution could not be proved by the certificate of the notary public—we must pronounce the objection not well taken. This instrument is essentially, by the very terms of the statute, and by its own terms, a part of the conveyance upon which it is indorsed—as fully and completely, as if it had been introduced into the body of the conveyance. The object of the statute is to provide a certain mode of manifesting the consent of a third person to the execution of a power, when such consent is requisite; and when the consent is manifested by expressing it in the instrument by which the power is executed, as matter of evidence, it is not distinguishable from any other part of the instrument. If that instrument is a conveyance of real estate, the registration of which is authorized, the acknowledgment or proof of its execution brings it within the statute which authorizes such conveyances, or transcripts thereof, to be read in evidence without other proof of execution. Or, if it be not expressed in the instrument, but certified thereon, the instrument, if a conveyance of real estate, is, without it,

incomplete. As a conveyance, it is completed only by the certificate of the consent thereon indorsed. When such certificate is signed by the party giving the consent, it is a part of the conveyance, and the fact of signing may be acknowledged, or proved, as the execution of the conveyance can be acknowledged or proved. The registration of it is authorized, because it is part of the conveyance; a part necessary to its life, validity, and operation ; and its registration being authorized, the privilege of proving its execution, by the certificate of a proper officer, attaches, as it does to other registered instruments.

The controversy between the parties, its real merits, rest upon the effect of the instrument purporting to have been executed by Mrs. England. The trustee was not clothed with an absolute, unqualified power of sale. It was only with the *written consent* of his wife that the power of sale could be exercised. Now, it is certainly true, that when the consent of any person, either a party or a stranger to the instrument creating the power, or with or without a beneficial interest in its execution, is a requisite to a valid execution, there must be a strict compliance with this, as with any other condition.—1 Sugden on Powers, 370 (marg. 319). If a particular mode of manifesting the consent is required, it can not be manifested in another ; as, in the present case, mere verbal consent would not satisfy the terms in which the power is created and conferred. The written consent of the wife is essential, and without it a sale and conveyance by the trustee would be unauthorized, and not in execution of the power. But, when the consent of a third person is essential to the execution of a power, we do not understand that it is an inflexible rule, that such consent must be given before or at the precise time of execution. In all cases, it is enough that it is so given as to form a part of the transaction by which the power is executed.—1 Sug. Pow. 374 (marg. 324). In *Greenham v. Gibbeson,* 10 Bing. 363, it was said by TINDAL, C. J. : "Whether, in all cases, a consent, when necessary, must be given *before* the execution of a power, or whether it will in some cases be sufficient to ratify the execution of the power by a *subsequent consent,* it is unnecessary at present to determine. It is sufficient to lay it down, that where the nature and object of the power, and the circumstances of the case, point to a previous consent, then such previous consent is necessary, although not required by the terms of the power."

The intention of the donor or grantor in creating the power, its nature, and objects, and the purposes for which the consent is manifestly required, are important and controlling

considerations, in determining whether it should precede, concur with, or may be given subsequently to its execution. There is not, in the terms of this instrument, any limitation as to the time at which the consent of the wife to the execution of the power of sale should be given. Nor is there in the nature and objects of the power, or of the manifest purposes for which the consent of the wife to its execution was required, any reason for limiting its expression to the period of the sale and conveyance by the trustee. The present power is distinguishable from the power in *Bateman v. Davis*, 3 Madd. 59, which was to be exercised with the consent of the wife, for the sole benefit of the husband. A subsequent approval of the exercise of the power by the wife may not, in such case, be the equivalent of her previous consent; and the apprehension of pressure upon her judgment by the husband, to induce such approval, may be a sufficient reason for pronouncing it not the equivalent; though it would seem there was as much reason for apprehending such pressure, in procuring the consent, as in procuring a ratification. The power of the trustee was not here to be exercised for his own benefit. No advantage or benefit could accrue to him from its exercise. The proceeds of a sale would become funds which he would hold as trustee, subject to all the trusts imposed on the land, and which he was under the duty of re-investing on the same trusts. The wife has a life-estate in the premises, as to which, in a court of equity, she would be regarded as *feme sole*; and if she survived her husband she becomes a trustee, clothed with an unqualified power of sale. Having a life-estate, and the remainder being limited to her children, the concurrence of her judgment with that of the trustee, husband and father, in a sale, was the purpose of making her consent the requisite of a valid execution of the power. The power could be executed at any time, during her life and that of the husband. There is no time limited, within which it was to be executed. Now, it is difficult to perceive any good reason for a construction of the power, compelling her consent prior to, or at the time of the sale by the trustee; or of declaring she could not ratify and confirm a sale made before her consent was given. These are questions we do not find it necessary now to determine; for her consent was given before the sale and conveyance was complete—it was a part of the transaction. It was not given in the manner required by the statute—it was not incorporated in the conveyance by the trustee, nor was it certified in writing thereon, until after the conveyance by him was executed. It was subsequently certified, just as the statute prescribes; and with the certificate the conveyance was

delivered into the office of the probate judge, for registration, from that time taking effect as a registered conveyance. The certificate recites, that the sale was with the *full consent*, and at the *written request* of the wife. The *written request*, addressed, as it must have been, to the trustee, would be evidence, to all to whom it was shown, of the authority to sell in the exercise of the power.

Until there was a sale and conveyance, the consent could not be manifested as the statute requires it shall be, by being expressed in the conveyance, or certified in writing thereon. Until it was manifested in the one mode or the other, the transaction would not be complete; and when manifested, it would form a part of the transaction—a part within the contemplation of all the parties. For it is apparent from this instrument, signed and acknowledged by the wife, that her consent in writing to the sale was contemplated; and hence it is declared the sale was made with her *full consent*, and on her *written request*. The instrument was intended, doubtless, not as a ratification and confirmation of an unauthorized sale, but simply to manifest, in the mode prescribed by the statute, the existing fact, resting in another writing, of her consent to the sale. The request in writing to the trustee, to make the sale, must have been intended, either as an execution, or as a step preparatory to the execution of the power, so far as it depended upon the consent of the wife; and in favor of a purchaser for a valuable consideration, a court of equity would have interfered and supplied its defects, if she had refused to complete it.—1 Story's Eq. §§ 169–174.

We are of the opinion, that the sale and conveyance by the trustee is shown to have been with the written consent of Mrs. England, and is a valid execution of the power with which the trustee was clothed. This bill is, therefore, without equity. It discloses no more than an unquiet and unfounded apprehension of the validity of the appellant's title, and a false, clamorous assertion of a hostile title. A court of equity can not interfere to quiet the one, or to silence the other.—*Rea v. Longstreet*, 54 Ala. 291. For this reason, the decree of the chancellor, reaching the proper result, must be affirmed.