# Smith v. Turpin *et al.*

*Bill in Equity to Enforce Charge on Land.*

109 689
s127 74

1. *Antenuptial contract and conveyance; provision for support of children; construction of power of sale in wife.*—The preamble of an antenuptial contract and conveyance showed that the grantor intended to provide for the maintenance and support of the grantee and any child or children that might be born of the marraige, and by the instrument be conveyed to the intended wife certain land "for the maintenance and support of the party of the second part, and of any child or children she may have of said marriage," and conferred on the grantee the power to sell the land, and reinvest the proceeds, with the consent of the grantor. The instrument further provided that if the property conveyed, or its representative, should not be disposed of before the death of the grantee, it should go to the child or children of the marriage. The grantor died leaving a child of the marriage surviving. *Held,* that the death of the grantor terminated the power of sale in the grantee, at least during the life time and mi-

44

nority of the child, and that the land was charged with the support and maintenance of the child.

2. *Estate of married women under antenuptial contract and conveyance; not enlarged by subsequent legislation.*—The rights and estate of a married woman in land fixed by the terms of an antenuptial contract and conveyance cannot be enlarged by subsequent legislation changing the married woman's law.

APPEAL from the Chancery Court of Perry.

Heard before the Hon. W. H. TAYLOE.

The bill in this case was filed on January 9, 1895, by James Q. Smith, a minor, by next friend, against Louis W. Turpin, Marie L. Smith, Thomas O. Smith, A. Kolsky, and the Canadian & American Mortgage and Trust Company, Limited. The bill averred that the complainant was the son and only child of James Q. Smith, deceased, and resided with his mother, the defendant Marie L. Smith; that on July 22, 1879, James Q. Smith, deceased, was the owner of a tract of land particularly described in the bill, and in contemplation of his marriage to complainant's mother, and in consideration thereof, duly executed the following instrument: "This antenuptial contract and marriage settlement made and entered into this, the twenty-second day of July, in the year one thousand eight hundred and seventy-nine, by and between James Q. Smith, of the first part, and Marie L. Fair, of the second part, all of the county and city of Montgomery and State of Alabama, witnesseth: That whereas, a marriage is about to be solemnized between the party of the first part and second part, and it being desirable that a provision should be made by the party of the first part for the maintenance and support of the party of the second part, and any child or children she may have of said marriage. Now, therefore, in consideration of said marriage, and for the further consideration of twenty dollars, the receipt of which sum is hereby acknowledged, the party of the first part has this day bargained, sold, and conveyed, and by these presents doth bargain, sell, and convey unto the party of the second part, for the maintenance and support of the party of the second part, and for the maintenance and support of any child or children she may have of said marriage, the following described property: [describing the property.] To have and to hold the same to the party of the second

[Smith v. Turpin *et al.*]

part for the purposes before stated, and to the sole and separate use, and to be the sole and separate estate of the party of the second part, free from all debts, liabilities, obligations and engagements of the party of the first part, and from the claim or claims of persons who set up any right, title or interest therein through the party of the first part. The party of the second part is expressly empowered to sell all or any of said property for cash or on credit, and to reinvest the proceeds in other property or securities, and she may exchange the same or any part thereof for other like property or securities in writing, with the consent of the party of the first part; and all property so received or investments made shall be subject to the use and purpose heretofore stated, and in like manner to be free from all debts, liabilities or engagements of the party of the first part, and from all claim or claims of persons who set up any right, title, or interest thereto through the party of the first part. It is provided that if said property herein conveyed, or its representative, in the hands of the party of the second part, should not be disposed of before the death of the party of the second part, then, after her death, to the child or children of said marriage in equal portions; and if there should be no child or children of said marriage, then the party of the second part may dispose of the same by will, and, if not by will, then to the next of kin to the party of the first part. As witness my hand and seal, on the day and date above stated. [Signed] James Q. Smith." The bill further averred that said James Q. Smith, Sr., and Mamie L. Fair were lawfully married after the execution of said conveyance; that complainant was the only issue of said marriage; that complainant's said father died in 1881; and that the lands conveyed by said deed were not disposed of, sold, or incumbered during the life of James Q. Smith, Sr. It was further averred that the defendant Turpin had been in possession of said lands, receiving the rents, income and profits during the years 1893 and 1894, and was still in possession when the bill was filed, claiming through mesne conveyances executed by said Marie L. Smith to the other defendants after the death of James Q. Smith, Sr. The bill prayed that an account of the rents, incomes, and profits of said lands be taken, and the interest of complainant therein be ascertained, and re-

quired to be paid in such manner as may be just and equitable ; that a trustee or guardian be appointed for complainant to take charge of, receive and control the property and rights of the complainant under the deed from his father to Marie L. Smith ; that the deeds and mortgages mentioned in the bill, which were executed since the death of James Q. Smith, Sr., be set aside and declared void, so far as they purport to destroy or limit the rights of complainant under said deed from James Q. Smith, Sr.; and for general relief.  The defendant Louis W. Turpin demurred to the bill upon the following grounds : ''(1) That said bill of complaint is without equity, for the said bill of complaint shows upon its face that the said James Q. Smith has no interest, legal or equitable, in the lands the subject-matter of the suit. (2) For that the said bill does not contain equity, for the said bill of complaint shows that the said L. W. Turpin is the owner of the said lands the subject matter of the said suit. (3) For that said bill of complaint shows on its face that the said Marie L. Smith possessed an absolute power of sale for cash over the said lands, and the said bill shows that the said Marie L. Smith, before the filing of the said bill of complaint, executed a conveyance to the said land, reciting a cash consideration, and the said bill of complaint fails to show that this respondent ever had any notice, actual or constructive, that the said conveyance made by the said Marie L. Smith was not in fact based upon a sufficient cash consideration. (4) And the said L. W. Turpin demurs to so much of said bill of complaint as seeks to charge him with rents, for that the said bill of complaint fails to show that this respondent is in any manner chargeable with the same.''  '' (7) And the said Turpin demurs to the said bill of complaint because the bill shows an equitable or contract separate estate in Marie L. Smith in said lands, and the right to sell or convey the same with the consent of the said James Q. Smith, and the death of the said James Q. Smith rendered nugatory that provision of the conveyance to the said Marie L. Smith which required his consent to a sale or exchange of the land. (8) Because the bill shows that the power to sell all or any part of said property for cash or on credit is conferred on Marie L. Smith by the antenuptial contract.'' The appeal is from a decree sustaining the demurrers.

[Smith v. Turpin *et al.*]

PETTUS & PETTUS, and J. H. STEWART, for appellant. —1. When the consent of a third person to the execution of a power is requisite, such consent must be expressed in the instrument by which the power is executed; or must be certified in writing thereon; in the first case, the instrument, in the second, the writing must be signed by the party whose consent is required.— Code, § 1861. 2. When the consent of any person, either a party or a stranger to the instrument creating the power, or with or without beneficial interest in its execution, is a requisite to a valid execution, there must be a strict compliance with this, as with any other condition.—1 Sugden on Powers, 370 (Marg. 319). If a particular mode of manifesting the consent is required, it cannot be manifested in another.—*March v. England*, 65 Ala. 282. 3. If the person whose consent is required dies before the execution of the power, the power is extinguished.—18 Am. & Eng. Encyc. of Law, p. 979, note 1; Perry on Trusts, § 784; *Sykes v. Sheard*, 2 DeG., J. & Sm. 6; *Alley v. Lawrence*, 12 Gray, 373; *Tyler v. Herring*, 19 Am. St. Rep. 278, note; *Barber v. Cary*, 11 N. Y. 397; *Kissam v. Dierkes*, 49 N. Y. 602. 4. The first and principle rule for the construction of deeds and other contracts is to ascertain the meaning of the parties. —Chitty on Contracts, 74–76. 5. Every condition in a power must be complied with "strictly, literally, and precisely."—*Hawkins v. Kemp*, 3 East., 410.

SEAY & DEGRAFFENRIED, *contra*.—When a power is vested in several persons, and, previous to the execution, one or more of such persons dies, it may be executed by the survivor or survivors.—Code, § 1865. "If a man devises lands to his executors to be sold, and maketh two executors, and the one dieth, yet the survivor may sell the land, because as the estate so the trust shall survive; and so note the diversity between a bare trust and a trust coupled with an interest."—Coke upon Littleton, 113 (a); Digges' Case, 1 Coke, 173. The conveyance is to Marie L. Fair directly. It is an antenuptual deed, and it created an equitable or contract estate, separate in her on her marriage. The legal title passed out of James Q. Smith. It must repose somewhere. It rested in her. It is admitted that it was covered by a trust for her maintenance and support and for that of any chil-

.dren of the marriage. The survivorship of the estate
carries with it such powers as are annexed to the trust,
because, as Lord Coke saith "as the estate, so the trust
shall survive."—Coke upon Littleton, 113a, 181b; 2
Perry on Trusts, § 505.

COLEMAN, J.—The appellee Turpin, by mesne con-
veyance from Marie L. Smith, claims to hold the legal
and equitable title to a certain tract of land, the subject
of controversy in this litigation. The ownership and
right of Marie L. Smith to convey the land involve the
construction of an antenuptial contract and conveyance
to her, made by James Q. Smith, the father of complain-
ant, but who died before the conveyance by the grantee,
Marie L. Smith, was executed. The cardinal rule, which
predominates all others, in construing contracts, deeds,
or devises, is to ascertain the intention of the parties,
and give effect to their intention. Principles of law for
the execution of trusts and of powers, recognized and
declared by courts, as well as statutory enactments, are
intended to aid in the ascertainment and enforcement of
the intention of parties making them; and whatever
may be the form of expression, or words used, they must
yield to the cardinal rule, rather than the intention
should be defeated. The preamble to the antenuptial
contract and conveyance is, "That whereas a marriage
is about to be solemnized between the party of the first
part, and second part; and it being desirable that a pro-
vision should be made by the party of the first part for
the maintenance and support of the party of the second
part, and any child or children she may have of said
marriage." It is very clear from this statement that
the party of the first part intended to provide for the
maintenance and support of any child or children of the
marriage, as for the party of the second part herself.
The contract and conveyance then proceeds: "In con-
sideration of said marriage, for the maintenance and
support of the party of the second part, and of any child
or children she may have of said marriage, doth bargain,
sell and convey unto the party of the second part [de-
scribing the lands]. To have and to hold to the party
of the second part for the purposes before stated." It
further provides, "that if said property herein conveyed,
or its representative, in the hands of the party of the

second part, should not not be disposed of before the death of the party of the second part, then after her death to the child or children of said marriage, and if there be no child or children of said marriage, then the party of the second part may dispose of the same by will," &c. The complainant is a child of said marriage, and the grantee is still living. Certainly upon the birth of the child, "the land conveyed, or its representative," not disposed of before the death of the party of the second part," was charged with the support and maintenance of the child, during her lifetime, and after her death, the child surviving her, it vested in him. We are satisfied that the language of the contract, and the evident purpose of the grantor, admits of this construction and of no other. After the death of the grantor, and while the child was living, the grantee sold the land, and thereby deprived the child of its support and maintenance from the land, and the question is whether she acquired by the deed an interest and authority to enable her to make such disposition of the land. The deed contains the following provision, from which the contention arises. "The party of the second part is expressly empowed to sell all or any of said property for cash or on credit, and to reinvest the proceeds in other property, or securities, and she may exchange the same or any part thereof for other like property or securities in writing, with the consent of the party of the first part, and all other property so received or investments made shall be subject to the use and purposes heretofore stated," &c. It would be a perversion of language, as well as doing violence to the intention of the grantor, to hold that the party of the second part had authority by virtue of this provision to sell or exchange the property during the lifetime of the grantor, without his consent, when it is expressly stated that it may be done with his consent.

Was the property right of the wife, and her power of disposition, enlarged by subsequent legislation or the death of the husband? In the case of the *Memphis & Charleston Railroad Co. v. Bynum*, 92 Ala. 335, this court held that the rights of the husband and wife, fixed by an antenuptial contract, were not affected by the married woman's law, and that the legislature had no power to alter contractual rights acquired before the adoption of

[Smith v. Turpin *et al.*]

the act.   We find no provision in the contract that the death of the grantor should discharge the burden or trust placed upon the land, for the support and maintenance of a child born of the marriage.   We find no provision that, by the death of the grantor, the estate of the party of the second part should be freed from the support and maintenance of a child of the marriage.   It seems evident that the intention of the grantor was, that if the land was not disposed of during his lifetime, which could not be done without his consent, either for investment or for an exchange of other property, and there was a child of the marriage, the child should be supported and maintained from the land, and if the child survived the party of the second part, the land was to become to property of such child.   No other construction will give effect to the whole instrument and the intention of the grantor, manifested from the preamble to the conclusion.   There was no independent power of disposal vested in the grantee, nor could the estate created in her by the conveyance become absolute with the power of disposal except from and after the death of the grantor, and a failure of a child or children of the marriage, or the death of such child or children, if any were born.   A child having been born of the marriage, the death of the grantor terminated the power of disposition, at least during his lifetime and minority. *March v. England*, 65 Ala. 282; Perry on Trusts, § 784; 18 Am. & Eng. Ency. of Law, p. 979, notes and authorities.

It follows from what has been said that the demurrer to the bill was not well taken, and should have been overruled.

Reversed and remanded.

HEAD, J., not sitting.