# Woodruff *et al. v.* Smith.

*Bill in Equity to enforce Trust on Land.*

1. *When decree final.*—A decree in chancery is final and will support an appeal when it ascertains and determins all the rights of the parties litigant, and settles the equities involved in the suit; and it is no objection to the finality of a decree that after its rendition the cause is still pending in the chancery court awaiting further proceedings which may be necessary to entitle the parties to the full possession and enjoyment of the rights such decree may have declared them to have.

2. *Chancery pleading; exception to register's report must be reserved in accordance with rules of practice.*—Where exceptions to particular findings of a register, as set forth in his report, are not made in accordance with the rules of chancery practice, (Code, p. 1222, rule 94), the chancellor is under no obligation to make investigation; and the appellate court will not review the rulings of the chancellor upon such exceptions.

5

APPEAL from the Chancery Court of Perry.

Heard before the Hon. W. H. TAYLOE.

The day before his marriage and in consideration thereof, James Q. Smith conveyed to his bethrothed, Marie L. Fair, 640 acres of land in Perry county, known as "Grove Cottage Plantation," "for the maintenance and support of the party of the second part and any child or children she may have, of said marriage." The marriage was solemnized. Mrs. Smith possessed herself of all of said land. A child was born, James Q. Smith, Jr., and then in 1881 the father grantor died. This child is sometimes called "Seti." The widow, Marie L. F. Smith, the son, James Q. Smith, Jr., continued to reside in the dwelling on said tract till about December, 1892.

In 1882 the widow married one Wm. J. Smith, who thereafter resided with her, and her son, James Q. Smith, Jr., on said "Grove Cottage Plantation." On Feb. 24th, 1885, Marie L. F. Smith and her then husband, Wm. J. Smith, mortgaged all of said land to Woodruff & North, and on 9th March, 1886, in consideration of the release of 200 acres of said land, on which were the dwelling, wells and out houses, and of $3,670 which they owed Woodruff & North, Marie L. Smith and husband conveyed to E. W. North for Woodruff & North, 440 acres of said tract. At the same time, and as a part of same transactions, with the making and delivery of the conveyance to North of the 440 acres, said Marie L. Smith and her husband executed and delivered to North an instrument in writing, reciting that said Marie L. Smith and husband had this day conveyed to North 440 acres of land for $3,670, which was paid, as will be seen by reference to a certain deed of date March 5th, 1886, "and whereas said lands are a certain tract of land heretofore conveyed to said Marie L. Smith by name of Marie L. Fair, in trust for the support and maintenance of herself and any child born of her by James Q. Smith, the grantor; and whereas, after her marriage with James Q. Smith, she, the said Marie L., had a child, now living and known by the name of Seti Smith, an infant, and whereas said child has been maintained and supported out of the

income arising from said property, and whereas Marie
L. and Wm. J. Smith have retained 200 acres of the
land so conveyed by said James Q. Smith, which is
amply sufficient for the support, education and main-
tenance of said child, and for other purposes in said
deed mentioned, now the said Marie L. Smith and Wm.
J. Smith, her husband, hereby covenant and agree with
said Edwin. W. North, that they will faithfully apply
the said 200 acres of land and the rents and profits there-
of, or so much as may be necessary, to the education,
support and maintenance and benefit of said child, in
such manner as will release and discharge the land con-
veyed to said North from all liability to the trusts in
said deed of James Q. Smith, to the best and utmost of
their ability, and to every extent practicable." This
instrument was duly acknowledged, attested by two
witnesses, and filed for record on the same day, as the
conveyance referred to therein.

North took possession of the 440 acres of land for
Woodruff & North, and they, through tenants, held pos-
session till the receiver in this cause took them about
the 1st of January, 1897. Mrs. Smith and her son,
James Q. Smith, Jr., called Seti, in the covenant above
quoted, lived on said 200 acres, retained and appro-
priated the proceeds of said land to the support of said
son, till December, 1892, when she removed to Mont-
gomery, where she supported and maintained her said
son up to October, 1896. In April, 1888, Marie L. and
Wm. J. Smith conveyed the 200 acres to Thomas Q.
Smith, and on the 13th of July, 1888, he mortgaged this
land to Canadian & American Mortgage & Trust Co.,
and on the 24th November, 1891, again mortgaged the
land to A. Kolsky. In February, 1893, Canadian &
American Mortgage & Trust Co. sold and transferred
its debt and mortgage to L. W. Turpin, and afterwards
filed in this cause its disclaimer.

Kolsky foreclosed his mortgage on January 7, 1893,
and became the purchaser of the land; and Turpin
bought said land from Kolsky, and took possession in
January, 1893, and held this 200 acres till the receiver
took it from him.

On December 31, 1894, J. Q. Smith, Jr., filed his bill against S. E. Woodruff, individually and as executrix of the will of N. Woodruff, deceased; Mrs. L. B. North, individually and as executrix of the will of E. W. North; and Marie L. Smith and others. On February 21, 1895, J. Q. Smith, Jr., filed his bill against L. W. Turpin, Marie L. Smith, Thos. Q. Smith, A. Kolsky and the Canadian & American Mortgage & Trust Co.

The bill against Mrs. Woodruff and others, after averring the facts substantially as set forth above, further averred the execution of a mortgage by Marie L. and Wm. J. Smith to Woodruff & North, an absolute conveyance by Mrs. Smith and her husband to E. W. North on March 9th, 1886; and further averred the death of N. Woodruff, the probate of the will and the qualification of his widow, S. E. Woodruff, as executrix under said will.

The bill against Turpin and others after setting out the facts as stated above, also averred the execution of the conveyance by Marie L. and Wm. J. Smith to Thos. Q. Smith; that the latter executed a mortgage to the Canadian & American Mortgage & Trust Company; that said mortgage was usurious and was made to a foreign corporation which had not complied with the statutes of Alabama. The bill further averred the execution of the mortgage to Kolsky, the foreclosure thereof by sale under the power contained in the mortgage, the purchase at said foreclosure sale by Kolsky of the lands sold and a conveyance of said lands so purchased by Kolsky to Turpin, and that Turpin was in possession of the 200 acres so purchased, and had received the rents in the years 1893 and 1894, which was $400 annually.

The prayers of the two bills were substantially the same, and prayed that all the conveyances of said land, included in the ante-nuptial contract, or any part thereof which was made after the death of James Q. Smith, be set aside and declared null and void; that the rights and equities of all parties to these suits in the said lands and in the rents thereof may be settled and determined by the court; that an accounting of the

rents be taken, and the complainant be decreed to have such part thereof as he may be rightfully and equitably entitled to. There was also a prayer for general relief in each of the bills.

Mrs. Woodruff answered the bill, and converted her answer into a cross-bill, which the chancellor dismissed. In her answer she shows that the 440 acres of land are held by the surviving partner of the late firm of Woodruff & North.

Turpin demurred to the bill against him, the demurrer was sustained, the bill dismissed, appeal taken from this decree and it was reversed in the Supreme Court, which construed the ante-nuptial contract and conveyance. (See *Smith v. Turpin et al.*, 109 Ala. 689). After this reversal, both cases were put at issue, and L. W. Turpin then filed a cross bill, and set up the pendency of both bills, by Smith, Jr., against him and against Woodruff & North and others, and made all the parties defendants to said bill, except himself, parties defendant to his cross bill, and prayed that said causes be consolidated.

On November 30, 1896, a decree was entered in all three of these causes, which was in words and figures as follows: "These three causes come on to be heard together, and were submitted together, by consent of all the parties, on the pleadings in all the cases, and on the note of testimony made by the register of this court, and on the decree *pro confesso* for final decree. And now, the court having fully considered all the matters submitted, is of the opinion that the complainant, James Q. Smith, Jr., is entitled to the relief prayed in both of his bills of complaint, and it is ordered and adjudged and decreed as follows:

"First. That the complainant, James Q. Smith, Jr., a minor, under the deed of ante-nuptial marriage settlement which was executed by James Q. Smith, Sr., to Marie L. Fair (the father and mother of complainant), and as the only child of said James Q. Smith and his wife Marie L. Smith, is entitled to an annual sum of money for each and every year, from the 5th day of April, 1888, when the said Marie L. Smith sold and conveyed the last 200 acres of said Grove Cottage Plan-

tation, to Thomas Q. Smith, until the 7th day of January, 1896, sufficient for the maintenance and support of the complainant, including education, in each one of said years, according to the degree and condition of said complainant, and provision made for his benefit by his father, in said ante-nupital deed of which exhibit A to complainant's bill is a copy, together with interest on each of said annual sums, out of the rents, issues and profits of the said Grove Cottage Plantation, described in said exhibit A, and the payment of said annual sums and interest is made a charge on said Grove Cottage Plantation. And the said James Q. Smith, complainant, is also entitled to a sum of money annually for each and every year during the lifetime of his mother, said Marie, so long as the complainant lives, sufficient for his maintenance and support, including education, in each one of said years, according to the degree and condition of said complainant, and the provision made for his benefit in said ante-nuptial deed by his father, of which exhibit A to the complainant's bill is a copy, to be paid on the 5th day of April in each year, commencing on the 5th day of April, 1889, out of the rents, issues and profits of the said Grove Cottage Plantation, described in said exhibit A, and the payment of said annual sums, is made a charge on said Grove Cottage Plantation. But the defendant, who is to be required to pay said annual sums is not determined, but is reserved for the further consideration and decree of this court, in said cause.

"2. It is further adjudged and decreed that at the death of the said Marie L. Smith, the mother of said complainant, the said Grove Cottage Plantation will be the absolute property of the said James Q. Smith, Jr., his heirs and assigns in fee simple forever.

"3. And it is further ordered and decreed that said three causes together be referred to the register of this court with authority to take testimony about or concerning any of the matters involved in said causes, which may be offered by any of the parties; and said testimony so taken by the said register shall be reduced to writing, and all testimony so taken shall be reported to this court.

"4. The said register will ascertain and report what sums of money are justly due to the complainant, for his maintenance and support and education from the 5th day of April, 1888, to the 5th day of April, 1896, under this decree; and the said register will also ascertain and report what sums will be justly due to the complainant each year under this decree, after the 5th day of April, 1896.

"5. The said register will also ascertain and report what part, if any, of the sums of money which he ascertains to be due, or the sums of money which he ascertains will become due, to the said James Q. Smith, Jr., under this decree should, in equity, be paid out of the rents and profits of the lands sold by said Marie L. Smith and her then husband, to said Edwin W. North; and also what part of said sums, if any, should in equity, be paid out of the rents and profits of that part of said lands (called Grove Cottage Plantation) which is now in the possession of or under the control of the said Louis W. Turpin.

"6. And the said register will ascertain and report what part of said Grove Cottage Plantation has been in the possession of or under the control of said Louis W. Turpin from the 5th day of April, 1888, and during what year and the value of the use and occupation of that part for each year from 1888 to 1897, both inclusive :

"7. And said register will also ascertain and report what part of said Grove Cottage Plantation was sold and conveyed by said Marie L. Smith and her then husband to said Edwin W. North, and what has been the annual value of the use and occupation of that part of said plantation each year from 1888 to 1897, both inclusive.

"8. And it appearing to the court that the complainant by the consent of his mother and of his guardian *ad litem*, and of his solicitors, is being maintained, supported and educated by Col. James T. Murfee at Marion, Alabama, being at the Marion Military Institute,

it is ordered that there shall be paid out of any money which may come under the control of this court in these cases, for the said complainant's just compensation to said James T. Murfee for such reasonable support, maintenance and education. And said register will ascertain and report what sum or sums is or are reasonable compensation due or to become due to said James T. Murfee under this decree.

"The register will report in the premises without delay. And these causes are held up for further orders and decrees in vacation or term times."

The register held this reference in accordance with directions of the chancellor and made his report thereof in vacation, setting out at length the rights of the respective parties to the litigation, and ascertaining the rental value of the lands for the years involved in the controversy, and also fixing the amount the complainant was entitled to for support and education. To this report of the chancellor there were many exceptions reserved. The facts relating to these exceptions, necessary to an understanding of the decision on the present appeal, are sufficiently stated in the opinion, and it is unnecessary to set them out in detail.

On the coming in of the register's report, it was filed on January 2, 1897. The chancellor on March 22, 1897, rendered a decree in vacation which was as follows: "These causes coming on to be heard again at this time, are submitted for decree in vacation upon the report of the register of this court, filed on the second day of January, 1897, and the exceptions thereto filed on behalf of S. E. Woodruff and L. W. Turpin, and the said report and exceptions thereto having been duly considered and understood by the court, it is ordered, adjudged and decreed by the court as follows:

"1. That the exceptions on the part of the said S. E. Woodruff and L. W. Turpin to the report of the register, of an allowance to the complainant for the years 1888, 1889, 1890, 1891 and 1892 be and the same are hereby sustained, and the report of the register is, except as hereinabove stated, in all things confirmed. And the court, correcting the report of the register,

filed in these causes, on the second day of January, 1898, doth order, adjudge and decree as follows:

"1. That the complainant is entitled to support and maintenance for the years 1893, 1894, 1895, 1896 and 1897, from the lands described in the ante-nuptial contract between James Q. Smith and Marie L. Fair, in evidence in these causes, from the first day of January, 1893, to the first day of January, 1897, in the sum of $1,160.70; that the said complainant is entitled to support and maintenance, including education for the year 1897, at the rate of $450 per annum.

"It is further ordered, adjudged and decreed that the said sums of $1,160 and $450 ought to be first paid out of the lands known as the Turpin lands, which were last conveyed by Marie L. Smith and William J. Smith, her husband, which are described as follows, to-wit: East half of southwest quarter, west half of southeast quarter and northeast quarter of southeast quarter of section twenty-seven, township nineteen, range six, east, containing two hundred acres.

"And it is ordered, adjudged and decreed that unless the said sums, together with the costs of the above entitled causes, are paid to the register of this court within fifteen days after the filing of this decree, that the register of this court shall, after giving notice by advertisement in some newspaper published in Perry county, Alabama, once a week for three consecutive weeks, sell the above described lands to the highest bidder for cash."

The remainder of the decree contained directions to sell the lands known as the Woodruff & North lands in the event the Turpin lands were not sufficient to pay the sum specified in the first portion of the decree, and also directions to the register as to making the further report.

On April 28, 1897, Mrs. S. E. Woodruff took an appeal from this decree in behalf of herself and her codefendants. The appellants assign as error the rendition of the decree of November 30, 1896, and also the rendition of the decree of March 22, 1897.

SAM WILL JOHN, for appellant.—The decree rendered in March, 1897, was final, and the appeal brings it and all previously rendered interlocutory decrees up for review.—*Kimbrell v. Rogers*, 90 Ala. 343.

J. H. STEWART, *contra.*—The decree of March, 1897, was not final. The test of the finality of a decree which our decisions have prescribed is not whether the cause is still in progress in the court of chancery awaiting further proceedings which may be necessary to entitle the parties to the full possession and enjoyment of the rights it has declared they have; but whether it has been rendered settling those rights.—*Cochran v. Miller*, 74 Ala. 63; *Jones v. Wilson*, 54 Ala. 50; *Broughton v. Wimberly*, 65 Ala. 549; *McLemore v. Nuckolls*, 37 Ala. 662; 3 Brick Dig. 399, § 525.

DOWDELL, J.—The appeal in this case is taken by S. E. Woodruff on behalf of herself and her co-defendants from the decree of March 22, 1897. A severance was had and errors separately assigned by S. E. Woodruff and L. W. Turpin; no assignments of errors by other defendants. Assignments by L. W. Turpin not being insisted on by him, we will only consider those assignments made by S. E. Woodruff.

The first assignment of error relates to the decree of November 30, 1896. No appeal was taken from this decree, and the motion to strike this assignment raises the question as to whether this decree is interlocutory or final. The complainant's bill was filed for the purpose of having determined and fixed his rights in the land involved under the ante-nuptial contract between complainant's father and mother, a copy of which is attached as exhibit A to the bill. On a former appeal in this case, this contract received a construction by this court.—*Smith v. Turpin, et al.* 109 Ala. 689. Following the construction placed upon this contract by this court, the decree in question rendered on November 30, 1896, was upon a submission of the several

causes named, by consent of parties, for final decree
on the pleadings and testimony. This decree has all
the elements of a final decree, and from an examination
of the pleadings it would seem that every question af-
fecting the rights and equities of the parties was fully
determined, leaving nothing to be done, except to put
the complainant in possession and enjoyment of the
rights decreed to him by appropriate orders of the
court. In *Cochran v. Miller et al.* 74 Ala. 62, 63, it was
said by this court: "The test of the finality of a decree,
which our decisions have prescribed, is not whether the
cause is still in progress in the court of chancery, await-
ing further proceedings, which may be necessary to en-
title the parties to the full possession and enjoyment of
the rights it has been declared they have; but, whether
a decree has been rendered settling those rights;" cit-
ing *Jones v. Wilson,* 54 Ala. 50; *Broughton v. Wim-
berly,* 65 Ala. 549; *McLemore v. Nuckolls,* 37 Ala. 662.
And it is also further said in that case: "Under our
chancery system, there may be two final decrees in one
and the same cause, and there may be, and frequently
are, two appeals therefrom." In its terms and provis-
ions, there is a striking similarity between the decree
in *Cochran v. Miller,* which was held to be a final de-
cree, and the decree of November 30, 1896, in the pres-
ent case. As to the elements which go to constitute a
final decree, the two are substantially the same. The
decree of November 30, 1896, being a final decree, and
no appeal having been taken from it, the motion to
strike the assignment relating thereto must prevail.

Assignments numbered from 2 to 8, both inclusive, re-
late to the action of the chancellor in overruling the
exceptions of S. E. Woodruff, numbered from 7 to 13,
both inclusive, to the register's report. Rule 94, Chan-
cery Practice, Code, 1896, provides as follows: "In fil-
ing exceptions to the report of the register, or any part
thereof, it shall be the duty of the solicitor filing the
same to note at the foot of each exception to conclusion
of facts, drawn by the register, the evidence, or parts of
evidence he relies on in support of the exceptions, with
such designation and marks of reference as to direct the
attention of the court to the same; and if the opposing

solicitor desires to do so, he can note in writing such other parts of the evidence as he may deem material to the inquiry. In considering such exceptions, the chancellor need not examine testimony not thus noted." The manifest purpose of this rule is to relieve the chancellor of the tedious investigations and search through the testimony of witnesses in the cause for evidence, which, if it exists, must be familiar to the solicitor and of easy reference. A general reference to the testimony of a witness or witnesses in support of an exception to the register's conclusion on the facts, is not a substantial compliance with the rule, and the chancellor may for that reason decline to consider such exception. Nor is it rendered any the less objectionable in noting testimony in support of the exception to refer to the testimony in a general way and alone by reference to pages. Such noting is but little if any better than a general reference to the testimony of a named witness or witnesses, and fails to afford that aid and facility to the court intended to be accomplished by the rule. The exceptions in this case are characterized with the infirmities we have mentioned. In *Mahone v. Williams*, 39 Ala. 225, this court, quoting from Chief Justice MARSHALL, said: "It is not the province of a court to investigate items of an account. The report of a master is received as true, when no exception is taken; and the exceptions are to be regarded only so far as they are supported by special statements of the master, or by evidence which ought to be brought before the court by reference to the particular testimony on which the exceptor relies. Were it otherwise—were the court to look into the immense amount of testimony laid before the commissioner—the reference to him would be of little avail. Such testimony, indeed, need not be reported, farther than it is relied on to support, explain, or oppose a particular exception." See also *Stewart v. Cross*, 66 Ala. 22; *Vaughan v. Smith*, 69 Ala. 92; *Jones v. White*, 112 Ala. 449; *Thompson v. Maddux*, 117 Ala. 468.

The present case illustrates the reasonableness of rule 94, and the necessity for a compliance with said

rule. The second assignment of error is, that "the court erred in overruling exception 7, page 134 transcript, taken by appellant Woodruff to register's report, by decree of March 22, 1897, page.139 transcript." On page 134 of the transcript, exception 7 taken to the register's report is as follows: "For that the register has reported that a reasonable allowance for the support of the complainant for the year 1893 was $240, for 1894 $240, for 1895 $240, and from January 1st to October 1st, 1896, $200, whereas all the evidence without question shows that these findings of the register is for the reasonable support, etc. of the complainant "in the city of Montgomery, page 15 of the testimony." The transcript before us containing the master's report and the testimony taken before the master, does not preserve the paging of the report and testimony as presented in the court below. Looking from the second assignment of error in this transcript to exception 7, it is utterly impossible for this court to know what particular part of the evidence is relied on in support of the exception; and the court would therefore be required to read the entire testimony in the case to find out if there be any evidence to support such exception, the very thing that rule 94 was intended to obviate.

The decree appealed from of March 22, 1897, directs that the Turpin land shall first be exhausted for the satisfaction of said decree before going upon the lands of the appellant Woodruff. Certainly there is nothing in this part of the decree injurious to the appellant Woodruff and of which she could complain. Nor is there any error of which appellant Woodruff can complain in that there were no personal judgments rendered in said decree of March 22. The decree of November 30, following the construction put by this court upon the ante-nuptial contract determining the rights of complainant in the lands in question, fixed upon the same a liability, and the decree appealed from is only a step in the direction, by appropriate orders, of an enforcement of the rights and liabilities fixed by the former decree.

There is no error in the rendition of the decree appealed from, and the same must therefore be affirmed. Decree affirmed.

