# Compton, *et al. v.* Collins, *et al.*

### Bill for an Accounting and Cancellation.

(Decided November 23, 1916. Rehearing denied December 16, 1916.
73 South. 334.)

1. **Account; Report of Register; Restating.**—On a bill for accounting, the chancellor had a right to restate the account in his own way, in order to arrive at a correct conclusion, notwithstanding a statement of the account by the register.

2. **Appeal and Error; Review; Exceptions.**—Where both parties in argument on exceptions to the register's report, stated that the items in the report were substantially correct, and there was no specific adjudication of the exceptions to the register's report, the appellate court will not consider assignments of error made by respondent relating back to exceptions to the register's conclusion of facts, the decree being favorable to the respondent, nor to objections by complainant to their consideration, since the court will review only such questions as have been contested in the court below; but, where the chancellor restated the account, and substantially dispensed with the register's report, it devolves upon the appellate court to consider objections to the chancellor's statement of the account not previously considered by the court.

3. **Usury; Subsequent Transactions; Effect.**—On a bill for an accounting, etc., the original taint of usury attaching to an entire store account, attached also to all the consecutive obligations growing out of the original transaction.

4. **Same; Renewal.**—Where respondent knew that complainant's debt was usurious, and where nothing was said of usury, and it was not eradicated from the account, the mere renewal of the debt did not purge it of usury.

5. **Mortgages; Construction; Attorney's Fee.**—A provision in a mortgage that if it became necessary to employ an attorney to foreclose it, the mortgagor would pay such reasonable attorney's fee, and costs and expenses, as should be incurred by the mortgagee, did not secure the payment of a fee for unnecessary services, or services necessitated by the sole or contributing wrong of the mortgagee, being intended as an indemnity against any necessity for employing an attorney to foreclose.

6. **Payment; Application; Interest.**—Where the mortgage secured both interest bearing and non interest bearing items of the account, and a non interest bearing store account for the year 1904, had no other security, the proceeds of crops turned over by the mortgagor in 1904, were properly applied pro rata between the interest and non interest bearing sides of the account; the rule that if neither the debtor nor the creditor expresses any election as to the application of payment when made, the presumption is that they are applied most beneficially to the creditor, not applying.

7. **Same; Crop Mortgage.**—Where it appeared that for the store accounts of two certain years the respondents had the security of crop mortgages in addition to the security of the land mortgage, the crop payments for those

years were properly applied to the debts secured by the crop mortgages upon the principle that the proceeds of mortgaged property must be applied to the debts secured, in the absence of a different agreement.

8. **Same; Order of Maturity.**—Where the mortgage upon land secured both interest and non interest bearing items of the mortgagee's account against the mortgagor, the amount realized from the sale of the land should be appropriated to the payment of the oldest items.

APPEAL from Marengo Chancery Court.

Heard before Hon. THOMAS H. SMITH.

Bill by Hattie A. Collins and others, against James F. Compton and others, for an accounting and cancellation. Decree for complainants and respondents appeal. Reversed and remanded.

PETTUS, FULLER & LAPSLEY, BEN F. ELMORE, and HENRY MCDANIEL, for appellant. GEORGE PEGRAM, for appellee.

SAYRE, J.—This case involves an accounting between the assignee of a mortgage and the heirs and personal representative of a deceased mortgagor. A statement of the leading facts has appeared in the report of a former appeal.—*Compton v. Collins,* 190 Ala. 499, 67 South. 395. After the cause had been returned to the chancery court the parties entered into an agreement by the terms of which the chancellor was authorized to make a decree directing a reference and "that at the holding of said reference said register shall be governed by the opinion and decree of this court rendered in this cause in January, 1914, as modified and corrected by the opinion and decree of the Supreme Court of Alabama," and, on June 22, 1915, a decree was rendered with direction to the register substantially in the language of the agreement. October 6, 1915, defendants filed their statement of the account showing a balance in their favor on January 1, 1910 (the date, approximately, on which the bill in this cause was filed), of $8,062.54. Ten days later defendants filed another statement of the account showing a balance in their favor as of January 1, 1910, of $6,938.96, to which they added $3,261.04 for interest from the filing of the bill to the date of the filing of said second statement, and showing thus a total indebtedness of $10,-200. In this second statement they claimed also an attorney's fee for services rendered by their attorney in this cause. On October 6, 1915, complainants also filed their statement of the account between themselves and defendants, conceding a balance

[Compton, et al. v. Collins, et al.]

of $2,540.49 due to defendants as of January 1, 1910. The register held the reference as ordered, following the direction of the decree, as he was advised, and on November 10, 1915, he reported a balance due from complainants to defendants on January 1, 1910, of $2,286.29. Both parties excepted, complainants filing a second statement of account in which they conceded a balance of $2,740.59 due to defendants as of January 1, 1910. On January 24, 1916, the chancellor, restating the entire account, but following the opinion and decree of this court on former appeal in respect of those items therein considered and determined, reached the conclusion that on January 1, 1910, complainants owed defendants the sum of $2,099, which sum was the balance due on the store account of C. W. Collins, deceased, with Meyer Bros., and decreed a foreclosure unless complainants should redeem within ten days. Following the former opinion of this court the chancellor held that this balance bore no interest, for the reason that this balance was left over from the store account the whole of which was infected with usury.

(1) Of the chancellor's right to restate the account in his own way in order to arrive at a correct conclusion there can be no doubt (*Curtis v. Curtis*, 180 Ala. 70, 60 South. 165) ; and if, after giving due weight to the register's report (*Pollard v. American Freehold Land Mtg. Co.*, 139 Ala. 183, 35 South. 767), it appears that a correct result was reached, the decree will be affirmed of course.

(2) Defendant's reserved numerous exceptions to the register's report and have made numerous assignments of error on this appeal. Complainants (appellees), on the other hand, suggest that most of the assignments of error should not be considered, for the reason that the exceptions on which they are based do not fairly observe the rule of chancery practice (Code, vol. 2, p. 1556, rule 93) which requires that at the foot of each exception to conclusions of fact drawn by the register the evidence or parts of evidence relied on in support of the exception shall be noted, with such designation and marks of reference as to direct the attention of the court to the same, citing *Woodruff v. Smith*, 127 Ala. 65, 28 South. 736. It appears, however, that neither defendants' assignments of error, so far as they rleate back to exceptions to the register's conclusions of fact, nor complainants' objection to their consideration, need further engage the court's attention; this for the reason that, while the chancel-

lor was at pains to explain every process by which the decree for a sum certain in favor of defendants was reached, there was no specific adjudication of the several exceptions to the register's report, and, moreover, the chancellor states in his opinion, filed with the decree, that: "Both parties in argument on the exceptions state the items contained in the register's report are substantially correct [the chancellor found some trifling errors], and the questions involved are, which are interest-bearing items and how payments should be applied."

This court will consider in the way of review only such questions as have been contested in the court below, and this statement, along with the facts to which we have referred as shown by the record, will suffice to dispose of a number of the issues counsel for defendants (appellants) seek to raise by their brief, including among the rest, all those questions of fact disposed of by this court after mature deliberation on the former appeal; but, since the chancellor undertook to restate the account and to restate it not in accordance with the theory of either party, thus substantially dispensing with the register's report, it devolves upon us to consider such objections to the chancellor's statement of the account and his decree in accordance therewith as have not heretofore been under consideration in this court; for otherwise defendants would be deprived of the right of review as to conclusions which they have had no opportunity to controvert in the court below.

(3) On the former appeal the entire store account was denounced as affected by an agreement for usury. This view of that account has strong support in the evidence which goes to show mutuality of consent that usury should be charged, while defendants (appellants) concede that quite a number of items in the account upon which payments were made from time to time were actually charged at a price to produce an usurious rate of interest. The original taint attached to the whole family of consecutive obligations growing out of the original transaction. —Webb on Usury, § 308. Our judgment therefore is that the question of usury in the store account need not be further agitated.

(4) This court has heretofore decided on what seems now to be most clear evidential grounds and on good authority (*Meyer Bros. v. Cook*, 85 Ala. 417, 5 South. 147) that the appellant was not a bona fide purchaser of the indebtedness of Collins

to Meyer Bros. and the security for that debt. We still think that it would have been impossible, humanly speaking, that Compton should not know the true state of the account as to usury, and our sense of security in this conclusion is not at all disturbed by the fact that Compton and Collins may have gone over the account together; that Collins said the balance shown by the statement submitted to him was correct; that he was willing for Compton to purchase the same; and that he requested an extension which was granted. If Compton knew—and we think he did—that the debt was usurious, he could not have been misled. Nothing was said of usury, nor was the usurious excess of interest eradicated from the account. The mere renewal of the debt under these circumstances did not purge it of its usurious taint. —*Jones v. Jackson,* 14 Ala. 186.

(5) The next difference between the parties on this appeal arises out of appellants' (defendants') claim of a fee for the services rendered by his attorneys in the defense of his suit. An allowance on this account has been claimed by defendants from the beginning of this suit; but the question of its allowance in the circumstances of this case has not been heretofore considered by this court. The mortgage executed by complainants' decedent and assigned by Meyer Bros. to defendants provided: "That, if it shall become necessary to employ an attorney to foreclose this mortgage, or collect any part of the debt herein secured, we will pay such reasonable attorney's fee and all other lawful and proper costs and expenses that may be incurred by the party of the second part [mortgagees] in that behalf, and this mortgage shall stand as security for the same."

When filing their bill in this cause complainants, protesting that they were able, ready, and willing to pay any sum justly due to defendants, complained that defendants, who had advertised a foreclosure by sale under the power contained in the mortgage, were abusing the power for that they were claiming a debt against complainants that had been swollen by usurious and various other improper and unjust charges, and the event has justified this charge. The quoted stipulation of the mortgage was intended to indemnify defendants against any necessity for employing an attorney to foreclose; but it was not intended to secure the payment of a fee for unnecessary services, or services the necessity for which might be brought on by the sole or contributing wrong of defendants, however extensive or laborious

such services may be.—*Soles v. Sheppard,* 99 Ill. 616. Of the case of *Sturgis Nat. Bk. v. Smith,* 9 Tex. Civ. App. 540, 30 S. W. 648, cited by appellants, it may be noted that the creditor brought the suit, whereas here the debtor has filed the bill to get relief from an unjust and oppressive use of the mortgage; but if this circumstance be not considered to differentiate satisfactorily this case from that, then we prefer nevertheless the reason and authority of the Illinois case.

(6) This court held on the former appeal that defendants were entitled to interest on certain items debited to complainants in the account between the parties, pointing out the items, and thus establishing two classes of items, one interest-bearing, the other non-interest-bearing, and creating a necessity for a separation of the two classes in stating the account. It is doubtless true that neither complainants nor defendants at the time certain payments were made on the account between them had any such notion as that there was or ever would be a difference in respect to the interest-bearing quality of the items, and there may be question now whether the evidence justifies the establishment of such difference; but, if there has been error as to that, probably it has not been harmful to appellants. On Meyer Bros.' books all items were charged into one account, and all payments made, no matter from what source derived, were credited on the one account. The chancellor, crediting the proceeds of crops turned over by Collins, deceased, to Meyer Bros. in the years 1904, 1906, and 1907, divided the credits pro rata between the interest-bearing and the non-interest-bearing sides of the account. As for the payments made by the delivery of crops for the year 1904, we find no impropriety in the method of application adopted by the chancellor.—*Lane & Bodley Co. v. Jones,* 79 Ala. 163. The land mortgage, the mortgage the defendants were in the act of foreclosing when this bill was filed, secured both the interest-bearing and the non-interest-bearing items of the account, and the non-interest-bearing store account for 1904 had no other security. Defendants (appellants) invoke the rule that, if neither debtor nor creditor expresses any election as to the application of payments at the time payments are made, then, as between debts, the presumption is that credits are applied most beneficially to the creditor; that is, to the most precarious debt, or the one least secured.—*McCurdy v. Middleton,* 82 Ala. 131, 2 South. 721. But that rule is inapt to the case of the paymnets made in the year 1904, as a reference to the facts stated above will disclose.

(7) As for the payments made in the years 1906 and 1907, we think the chancellor fell into partial error. In these two years defendants Meyer Bros. had crop mortgages and these mortgages secured the store account for the years in which they were made. As to that account these mortgages were security additional to the land mortgage. The crop payments for these two years were properly applied to the debts secured by the crop mortgages on the principle that the proceeds of mortgaged property or property charged with a lien must, in the absence of an agreement otherwise, be applied to the debt secured.—*Boyd v. Jones,* 96 Ala. 305, 11 South. 405, 38 Am. St. Rep. 100, and the authorities cited in the chancellor's opinion. But there was an overplus in each year, and this overplus or excess the chancellor applied to the interest-bearing items. But, since no reason is recognized at law or in equity why defendants should be denied the principal of their store account or the security taken for it, no reason is made to appear why there should be any discrimination against the interest-bearing debt and its security in the application of these payments in excess of the debts secured by the crop mortgages. It was as much as complainants could ask that these excess payments should be applied to the interest-bearing and non-interest-bearing items pro rata. It will be so ordered.

If the balance remaining after all payments were credited in their proper places came over from non-interest-bearing items only—and that is what the chancellor found—then it seems it ought to be accepted as a matter of course that the balance, so long as it remained a balance only, not merged in a decree of the court, should not bear interest; for otherwise usury would be allowed contrary to the mandate of our statute.—Code, § 4623.

In the chancellor's statement of the account defendants were allowed interest from December 30, 1903, on the Avery and R. W. Collins judgments. The first mentioned of these judgments is inadvertently referred to by this court in its opinion on former appeal as the R. H. & W. C. Agee judgment.—*Compton v. Collins,* 190 Ala. 505, 67 South. 395. On these judgments respectively defendants should have had also interest from October 20, 1900, and January 1, 1902, down to the chancellor's date of December 30, 1903.

(8) The amount realized by the sale of lands in Hale county, the mortgage upon which secured both the interest-bearing and

[Hobson v. Wilson.]

non-interest-bearing items of the account, should be appropriated to the payment of the oldest items.—*Stickney v. Moore,* 108 Ala. 590, 19 South. 76. ˙

Other matters assigned for error have been concluded by the former opinion and decree of this court and the terms of the agreement and decree under which the last reference was held.

### DECEMBER 14, 1916.

On a former day of this term a ʿdecree was here rendered the effect of which in part was to reverse the chancellor's decree in some respects and remand the cause in order that the account between the parties might be restated in accordance with the opinion of this court. But now, the parties having joined in an urgent request that this court render a decree finally disposing of the cause, we have ascertained the amount due at this time from appellees to appellants and have rendered a decree foreclosing appellants' mortgage for the amount so ascertained and in other respects in accordance with the agreement of the parties on file.

Reversed and rendered.

ANDERSON, C. J., and McCLELLAN and GARDNER, JJ., concur.