(114 So. 211)

**DAVIS et al. v. ELBA BANK & TRUST CO. et al. (4 Div. 281.)**

Supreme Court of Alabama. Oct. 20, 1927.

**1. Husband and wife ⌑171(5)—Mortgage of wife's land to secure joint debt is void only in so far as it secures husband's sole debt.**

Wife's land may be mortgaged to secure joint debt of herself and husband, and is void only in so far as it secures husband's sole debt.

**2. Husband and wife ⌑171(4)—Burden is on wife to show that mortgage on her land secures sole debt of husband.**

The burden is on wife to reasonably show that mortgage on her lands is void as securing sole debt of husband.

**3. Mortgages ⌑16—Mortgage to secure existing debt, and debt incurred while it is in force, is valid security for loans and advances.**

A mortgage given to secure existing debt, and debt incurred while it is in force, is valid security for loans and advances made in good faith under its terms.

**4. Husband and wife ⌑171(5)—Mortgage on wife's lands for loans and advances to her on conduct of joint enterprise is valid.**

A mortgage on wife's lands for advances made in good faith, pursuant to terms, to her agent on conduct of joint adventure, is valid.

**5. Husband and wife ⌑171(5)—Mortgage for advances for joint benefit of husband and wife with unpaid balance to be secured by her separate property is binding.**

If there is established course of business, known to parties, by which advances are made for joint benefit of husband and wife in contemplation that unpaid balance shall be secured by mortgage on her property, mortgage given in pursuance of such common understanding is binding.

**6. Husband and wife ⌑171(5)—Facts held to show advances to husband and wife by bank were for joint benefit, and to be secured by mortgage on wife's lands.**

Facts *held* to show that loans or advances made by bank from year to year to husband and wife conducting joint adventure were to be secured by mortgage on her property.

**7. Husband and wife ⌑171(5)—Loans to husband for sole benefit, on sole credit, and merged into mortgage on wife's property, held not her debt.**

Where unpaid balance of advances to husband and wife in conduct of joint adventure were to be secured by mortgage on wife's property, any loan or other debt contracted by husband alone for his sole benefit, and on his sole credit or security, if merged into mortgage, was not her debt.

**8. Husband and wife ⌑171(13)—That items of husband's debts were merged in mortgage of wife's property held not to render mortgage subject to cancellation.**

Where unpaid balances of advances to husband and wife in conduct of joint adventure were to be secured by mortgage on her property, that items of advances contracted by the husband for his sole benefit were merged in the mortgage did not render mortgage subject to cancellation, but should be eliminated on accounting.

**9. Mortgages ⌑294—Evidence held to show mortgage debt, purged of usurious interest, was inadequate consideration for transfer of equity of redemption.**

In suit for cancellation of mortgage and deed conveying equity of redemption, evidence *held* to show that mortgage debt, purged of usurious interest, was inadequate consideration for deed.

**10. Mortgages ⌑294—Acquisition by mortgagee of equity of redemption is sustained only if supported by consideration and without fraud or undue advantage.**

While mortgagee may acquire by purchase mortgagor's equity of redemption, the transaction will be sustained only when supported by sufficient consideration, and there is absence of fraud, oppression, and undue advantage.

**11. Mortgages ⌑294—Acquisition by mortgagee of equity of redemption on sole consideration of debt infected with usury is prima facie oppressive and voidable.**

A transaction wherein mortgagee acquires mortgagor's equity of redemption on sole consideration of mortgage debt which is infected with usury is prima facie oppressive and voidable at suit of mortgagor.

**12. Mortgages ⌑294—Mortgagee occupies relation of trust toward mortgagor in conserving equity of redemption.**

A mortgagee occupies in some sense a relation of trust toward mortgagor in conserving his equity of redemption.

---

⌑For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**13. Usury ⬡⟹32—Seller may fix price of commodity for cash or credit, if there is not mere device to cover usury.**

A seller may fix the price of his commodity and name a cash price and a credit price, if it is not a mere device to cover usury.

**14. Usury ⬡⟹18—Amount loaned to borrower, paid or credited to him or to another, is sum upon which lawful interest may be charged.**

The amount loaned to the borrower, paid or credited to him or to another at his direction, is the sum on which lawful interest may be charged.

**15. Usury ⬡⟹88—Taint of usury once entering into debt persists in subsequent renewals, even though subsequent transactions take form of original loans.**

Taint of usury once entering into indebtedness persists through subsequent renewals, including usurious interest, even though the subsequent transactions take form of original loans, and it is made to appear that old debt is wiped out.

**16. Usury ⬡⟹88—Mortgage made to third person, proceeds of which satisfied bank's usurious mortgage, held not to purge bank's mortgage of usury.**

Where mortgage by husband and wife to bank was tainted with usury, mortgage given to customer of mortgagee bank who was a sister of an officer of the bank, and proceeds of which discharged original mortgage to bank, *held*, under facts, not to have intervened to purge the original mortgage of usury.

**17. Usury ⬡⟹100(1), 146—Rule that penalties for usury are forfeiture of interest, and that payments apply on principal, applies at law and in equity (Code 1923, § 8567).**

Rule, under Code 1923, § 8567, that penalties for usury are forfeiture of all interest, and that all payments must be applied on principal, applies in law and in equity no matter who the actor in the suit is.

**18. Usury ⬡⟹75—Where distinct debts, some usurious and some not, are combined in mortgage, entire debt is not infected with usury.**

Where several separate and distinct debts, some usurious and some not, are combined in one entire mortgage, entire debt is not infected with usury.

**19. Usury ⬡⟹80—Rule that entire debt combined in mortgage is not usurious is inapplicable to renewal mortgage with interest on whole debt figured therein.**

Rule that, where several separate and distinct debts, some usurious and some not, are combined in one mortgage, entire indebtedness is not infected with usury, is inapplicable to renewal mortgage, where usurious interest on the whole is figured into the mortgage.

**20. Usury ⬡⟹100(1)—Payments on mortgage account from mortgage' security are applied first to interest.**

Payments made on a mortgage account from a mortgage security are to be applied first to accrued lawful interest.

**21. Usury ⬡⟹100(1)—On interest unpaid, interest should be allowed only to such time as payments made suffice to satisfy them.**

While payments on mortgage account from mortgage security are to be applied first to accrued interest, on such items, if there be any, interest should be allowed only to such time as payment so made suffice to satisfy them.

**22. Husband and wife ⬡⟹171(9)—Wife held not chargeable for part of mortgage debt for which she was surety for husband only.**

In suit to cancel a mortgage on wife's property and deed transferring equity of redemption, complainant was not accountable for charges carried into the mortgage on which she was merely surety for her husband.

**23. Equity ⬡⟹66—Under rule that he who seeks equity must do equity, complainant was charged with advancement of money for building house on her lands.**

In suit to cancel mortgage and deeds transferring equity of redemption to wife's lands, where money advanced by mortgagee and grantee to her husband for building house ·on the land was with the consent of all parties, and was a permanent improvement on her estate, under rule which demands that he who seeks equity must do equity, the wife was chargeable with such advancement with lawful interest.

Appeal from Circuit Court, Coffee County; W. L. Parks, Judge.

Bill for cancellation of a mortgage and deeds, for redemption and accounting by Jane E. Davis and G. E. Davis, against the Elba Bank & Trust Company and the First National Bank of Elba. From a decree denying relief, complainants appeal. Reversed, rendered, and remanded.

P. B. Traweek, of Elba, for appellants.

The wife cannot, directly or indirectly, become the surety of the husband. Code 1923, § 8272. Either deed or mortgage, executed to the husband's creditor or in consideration of his debt, is void as to wife's property. Weil Bros. v. Pope, 53 Ala. 585; Boyleston v. Farrior, 64 Ala. 564; Bibb v. Pope, 43 Ala. 190; Lansden v. Bone, 90 Ala. 446, 8 So. 65; Richardson v. Stephens, 114 Ala. 238, 21 So. So. 949; Spencer v. Leland, 178 Ala. 282, 59 So. 593; Elkins v. Bank of Henry, 180 Ala. 18, 60 So. 96; Rollings v. Gunter, 211 Ala. 671, 101 So. 446. If the mortgagee uses the power his mortgage gave him to obtain the equity of redemption at less than its value, a court of equity will hold the transaction a mortgage and permit redemption. Morgan v. Gaiter, 202 Ala. 492, .80 So. 876; Oakley v. Shelley, 129 Ala. 467, 29 So. 385; Locke v. Palmer, 26 Ala. 313; Shaw v. Lacy, 199 Ala. 450, 74 So. 933; Smith v. Thompson, 203 Ala. 87, 82 So. 101; Hartley v. Frederick, 191 Ala. 175, 67 So. 983; Fowler v. Ala. I. & S. Co., 189 Ala. 31, 66 So. 672; Pool v. Menefee, 205 Ala. 531, 88 So. 654; Walling v. Thomas,

⬡⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

133 Ala. 426, 31 So. 982. A rent note by the mortgagor to the mortgagee is no impediment to redemption. W. E. Wright & Co. v. Butler, 186 Ala. 251, 65 So. 136. The mere renewal of usurious obligations will not purge them of their usurious character. Blue v. First Nat. Bank, 200 Ala. 129, 75 So. 577; Sewell v. Nolen Bank, 204 Ala. 93, 85 So. 375; Clio Bank v. Brock, 204 Ala. 57, 85 So. 297. Evasion of the statute, by including in paper only lawful interest, but paying something on the outside, additional, renders the contract usurious. Crowson v. Cody, 209 Ala. 674, 96 So. 875. Usurious interest paid will be applied by the court to the payment pro tanto of the principal debt. Scheussler v. Heard, 202 Ala. 648, 81 So. 590; Compton v. Collins, 190 Ala. 499, 67 So. 395; Lewis v. Hickman, 200 Ala. 672, 77 So. 46. When an agent purchases a usurious mortgage with notice of its character, such notice is charged to the principal. Wild v. Crum, 207 Ala. 132, 92 So. 252; Nicrosi v. Walker, 139 Ala. 369, 37 So. 97. No partnership between the husband and wife is shown. Levy v. Alexander, 95 Ala. 101, 10 So. 394.

Wilkerson & Brunson, of Elba, for appellees.

The right of the mortgagee to purchase the mortgagor's equity of redemption is recognized. Shaw v. Lacy, 199 Ala. 450, 74 So. 933; Grace v. Montgomery, 207 Ala. 188, 92 So. 412; Id., 209 Ala. 386, 96 So. 430; Farrow v. Bank, 184 Ala. 208, 63 So. 973; Ebersole v. B. & L. Co., 209 Ala. 438, 96 So. 245. The wife and the husband were partners in the business; both executed the note, and both were liable. Compton v. Smith, 120 Ala. 233, 25 So. 300.

BOULDIN, J. The equity of the bill was sustained on appeal from decree on demurrer. Elba Bank & Trust Co. v. Davis, 212 Ala. 176, 102 So. 117. The present appeal is from a final decree upon pleadings and proof denying relief to complainants.

One phase of the bill seeks to cancel a mortgage given to the Elba Bank & Trust Company on the lands of Jane Davis, upon the ground that it was given to secure the debt of the husband, George Davis; and cancel upon like ground a deed conveying the equity of redemption in satisfaction of this mortgage in the nature of a voluntary foreclosure. On this feature of the bill we find no error in the decree.

The initial indebtedness entering into the mortgage in question was a loan for the purpose of satisfying an existing mortgage on the same lands held by the First National Bank of Elba. This loan was secured by a mortgage for $3,122, December 29, 1915. Without going into details, we do not think, after careful study of the record, that complainants have carried the burden of showing the mortgage to the First National Bank thus taken up was itself subject to the same infirmity, or that the two banks were, at that time, collusively passing the debt and securities from one to the other to avoid this and other infirmities in the security.

It appears that Jane Davis owned a farm, the home of the family, containing some 144 acres, and of the value of $5,000 to $6,000. George Davis, her husband, owned the personalty on the farm and used in connection with farming operations. He managed the farm business. The Elba Bank & Trust Company financed it with loans to purchase fertilizers, procure supplies, etc., from year to year. The rents and income from the farm, after paying taxes and carrying charges on a first mortgage held by third parties, were paid from time to time to the bank on account of mortgage indebtedness, including accumulated indebtedness secured by the mortgage on the farm. From year to year the land mortgage was renewed for unpaid balance on the general mortgage indebtedness and further advances for the current year. Stated in broad outline, this course of business resulted in the final mortgage for $2,128.75, given January 4, 1922, due October 1st of the same year.

The husband and wife were engaged in a joint adventure, the wife furnishing the lands, the husband the personalty and management, and both their services in providing a common home and support for the family. They had a joint or common interest in the necessary loans and advances for current operations and in meeting the accumulated burdens of the joint enterprise.

[1, 2] The wife's lands may be mortgaged to secure the joint debt of husband and wife. Such mortgage is void only in so far as it secures the sole debt of the husband. The burden is on the wife to reasonably show that fact.

[3-5] A mortgage given to secure an existing debt and any debt incurred while it is in force is a valid security for loans and advances made in good faith pursuant to its terms. A mortgage on the wife's lands for such advances made in good faith to her agent in the conduct of a joint adventure, such as this, is valid. If there is an established course of business, known to all parties, by which advances are made for joint benefit of husband and wife in contemplation that any unpaid balance shall be secured by a mortgage on the wife's property, a mortgage given in pursuance of such common understanding is binding. It is not essential that a partnership named be assumed in the conduct of business. The substance of the agreement, express or implied from all the circumstances, determines the relation of the parties.

[6] So far as we recall, the several loans or advances made from year to year by the bank come within the principles announced.

[7] Any loan or other indebtedness contracted by the husband alone for his sole

benefit, or upon his sole credit or security, and afterwards merged into the mortgage upon the wife's property, is not her debt.

[8] Such items, if any there be, do not render the mortgage subject to cancellation, but should be eliminated on accounting and redemption hereinafter considered.

[9] The mortgage for $2,128.75 given to the Elba Bank & Trust Company upon the wife's lands, became due October 1st, 1922. On September 28th the mortgagee assigned the mortgage to the First National Bank of Elba. This bank urged payment. It declined to renew for another year. Cotton season being on, frequent small payments were made. Meantime a loan was being negotiated with the Federal Land Bank to take care of a first mortgage known as the Taft mortgage, and with the hope of getting funds to build, or aid in building, a new house on the farm. On November 27th a further payment of $100 was made, reducing the debt to $1,500, and on the same day the mortgagor and her husband executed an absolute deed, in consideration of the balance of the mortgage debt, conveying the equity of redemption to the First National Bank. At the same time, the husband executed a bill of sale to his personal property covered by a separate mortgage which had been assigned to the First National Bank along with the real estate mortgage. On the same day the First National Bank deeded the lands and transferred the personalty to the Elba Bank & Trust Company; the latter bank paying the former the amount due on the mortgages.

On the same day the Elba Bank & Trust Company entered into a lease sale contract agreeing to sell the lands to George Davis, the husband. This contract called for $750 to be paid by the Elba Bank & Trust Company for building the house. The price to be paid by George Davis October 1st of the following year was $2,640, a profit of near 20 per cent.

Upon default in payment of the purchase price, $600 rent was to be paid for which a note was taken. The net result of the day's work was to close out the wife entirely, pass the lands to the husband under a contract carrying heavy profits to the bank, imposing burdens on the husband he could not be expected to meet, and upon default converting him into a tenant, automatically vesting possession in the bank, with a rent charge of $600 and the loss of $150, part proceeds of the Federal Land Loan put into the house under the same agreement.

The personalty was also resold to the husband at a similar profit.

One alternative of the bill attacks this transaction, and aims at reclaiming and exercising the equity of redemption.

[10] A mortgagee may acquire by purchase the mortgagor's equity of redemption, "but equity looks with a jealous and distrustful eye upon such transactions * * * and

they will be sustained only when 'supported by a sufficient consideration, and there is an absence of fraud, oppression, and undue advantage.'" Shaw v. Lacy, 199 Ala. 450, 74 So. 933.

Equity "will not permit a mortgagee to use his position of superiority to oppress the debtor, or drive an unconscionable bargain, or take any undue advantage." Pearsall v. Hyde, 189 Ala. 86, 66 So. 665.

Here the husband was past 70 years of age, the wife 60. Neither could read nor write. Their names were signed to each of the long series of papers by mark. The papers on this day were drawn, witnessed, and acknowledgments taken by officers of the banks. No outside advice.

The weight of the evidence is that the equity of redemption in the lands was worth substantially more than $1,500, the mortgage debt. Moreover, the mortgage debt was tainted with usury; we may say with usury upon usury. Purged of usurious interest, the mortgage debt was wholly inadequate consideration.

[11] We may here and now lay it down as a rule that a transaction wherein the mortgagee acquires the mortgagor's equity of redemption upon the sole consideration of the mortgage debt infected with usury is prima facie oppressive and voidable at the suit of the mortgagor in equity. Such deal serves the purpose of cutting off the equity of redemption, as well as the statutory right of redemption secured by law after foreclosure, and the further purpose of collecting the usurious charges declared oppressive by law. Securing these results and putting these troubles behind him affords too great temptation to cupidity to meet with the favor of a court of equity.

[12] Mr. and Mrs. Davis had long done business with Mr. Amos, the vice president of the Elba Bank & Trust Company, who conducted these transactions. In their unlettered state, they must needs trust some one. A measure of confidential relations existed. A mortgagee occupies in some sense a relation of trust toward the mortgagor in conserving his equity of redemption.

It appears from Mr. Amos' testimony that Mrs. Davis declared boldly that she had parted with everything once and walked home, and she would do it again. Instead of showing independence under all the circumstances, this evidence rather indicates to us a sense of hopelessness. So, also, the testimony of Mr. Amos touching the appeals of the husband to get the property back, and the hard terms offered and accepted, suggested a state of panic on the part of these old people.

We will not pursue the discussion further. Not imputing any actual fraud or deceit, the transaction was oppressive and unfair, characterized by undue advantage to the strong as against the weak.

As between the banks, the transaction had

the effect to pass all title and claim of the First National Bank to the debt and to the property back to the Elba Bank & Trust Company. Complainants have an equity of redemption, with the right to an accounting against the latter bank.

It appears that in the initial mortgage of December, 1915, maturing within less than one year, interest for a full year was charged and included with the principal in the face value of the paper. Most, if not all, of the yearly renewals of the land mortgage were subject to same infirmity. Ad interim loans or advances, secured by separate papers, and merged on renewal into the general indebtedness after deducting payments made an account, in many cases, carried like usurious interest.

It appears that the stockholders and directors of the Elba Bank & Trust Company formed a partnership to engage in the fertilizer business, under the name of Rainer & Co. This business was financed through the bank by the common officers of both concerns in this manner: Complainants purchased fertilizers in the spring at credit prices. Notes were given for this price to the bank, payable in the fall. Thereupon the bank paid or passed to the credit of Rainer & Co. the cash price of the fertilizer, an amount less than the fall price, a difference in the nature of a discount in excess of 8 per cent. per annum on the money loaned.

[13, 14] The law recognizes the right of a seller to fix the price on his commodity, and to name a cash price and a credit price, provided it is not a mere device to cover usury. But this in no way protects a bank in the conduct of its business. The amount loaned to the borrower, paid or credited to him or to another at his direction, is the sum upon which he may charge lawful interest. Any sum included in the note in excess of such interest renders the transaction usurious. Any other view would put the bank in the fertilizer business, one not authorized by law.

[15] The taint of usury once entering into the indebtedness persists through subsequent renewals, including the usurious interest. No matter that the subsequent transactions take the form of original loans, that applications and mortgages so declare, or that, by process of bookkeeping, or the passing of checks, it is made to appear the old debt is wiped out. All this as a method of purging the indebtedness of usury is abortive, and treated as mere evasive device.

[16] Upon careful consideration, we conclude that the mortgage given to Mrs. Limma Lee in November, 1920, the alleged proceeds whereof went to satisfy the bank mortgage, cannot intervene to purge the usury from the several transactions theretofore. Mrs. Lee was a customer of the bank, with funds on deposit, a sister of Mr. Amos, the officer of the bank representing both parties in the transaction. The mortgage was to mature within little more than two months, and before maturity the bank renewed its mortgage upon complainants' property for the full amount of indebtedness and added charges, whereupon the Lee mortgage was satisfied. Without going into details and omissions in the testimony on this matter, we hold the transaction was for the benefit and convenience of the bank, instigated and consummated by the acting officer of the bank, and the mortgage of January 29, 1921, is to be treated as a mere renewal of former indebtedness tainted with usury. In the accounting upon the matter of usury the mortgages given by complainant to the bank will be dealt with as though the Lee mortgage had not intervened. Blue v. First National Bank, 200 Ala. 129, 75 So. 577.

[17] The penalty for usury is the forfeiture of all interest. All payments must be applied on the principal. This rule applies at law and in equity. No matter who is the actor in the suit. Code, § 8567.

[18] Where several separate and distinct debts, some usurious and some not, are combined in one mortgage, the entire indebtedness is not infected with usury. Compton v. Collins, 190 Ala. 499, 67 So. 395; Noble v. Moses, 74 Ala. 604.

[19] This rule has no application to the renewal mortgage where usurious interest upon the whole is figured into the mortgage. Such appears to be the case here as to all renewals of the land mortgage.

If any of the temporary loans and advances for the current year, evidenced by mortgage or note, carried only legal interest, it should be allowed as part of the principal until paid.

[20, 21] Payments made on a mortgage account from the mortgage security are to be applied, first, to accrued lawful interest. On such items, if any there be, interest should be allowed only to such time as the payments so made suffice to satisfy them. Compton v. Collins, supra.

[22] We have given some study to ascertain if usurious interest paid, when applied on the principal, equals or exceeds the balance of $1,500 alleged to be due thereon, so that a decree can now be rendered ending the litigation. It appears possible, and even probable, that, eliminating all interest tainted with usury, the debt is satisfied, but, as the parties may have expected a reference on such issue, and may have failed to develop all the facts, the cause will be remanded for proper decree of reference. Any other unlawful charges carried into the mortgage debt, such as mortgage record taxes, should be eliminated. Mrs. Davis will be charged with none of the items incurred in 1923 and 1924. As to these, so far as her name appears thereon, she was merely surety for her husband.

[23] But the sum of $750 invested by the bank in building the residence on the place she should pay. This improvement was with

the consent of all parties, and is a permanent improvement on her estate. While not a part of the mortgage debt, yet under the rule which demands that he who seeks equity must do equity, she will be required to pay this with lawful interest, as a condition to the relief by way of redemption.

A decree will be here entered declaring complainants entitled to relief, canceling the land deed from Jane Davis and G. E. Davis to the First National Bank of Elba, of date November 27, 1922, the land deed of same date from the First National Bank to the Elba Bank & Trust Company, the lease sale contract of same date between the Elba Bank & Trust Company and G. E. Davis, restoring to Mrs. Davis her equity of redemption in said lands. The rent note of $450, given for rent of 1924, is canceled as to both complainants. It arose from conditions herein declared to be inequitable. Mrs. Davis' equity of redemption as a mortgagor being here decreed still intact, if such note were paid, the respondent would be accountable therefor as a mortgagee in possession.

The bill of sale of the personalty by G. E. Davis to the First National Bank and resale of same to the Elba Bank & Trust Company are canceled, and his right of redemption restored subject to the principles above announced. Any redemption by him must take into account subsequent loans and advances, subject to the rules as to usury, above announced. He will not be required to pay the $750 going into the house. This goes with the land as above declared.

Let respondent Elba Bank & Trust Company pay the costs of appeal in this court and the court below.

Reversed, rendered, and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.