4 So.2d 474

**GRIDER v. CALFEE et al.**

**4 Div. 185.**

Supreme Court of Alabama.

Oct. 30, 1941.

Rehearing Denied Nov. 21, 1941.

E. C. Orme, of Troy, for appellant.

John C. Walters, of Troy, for appellees.

LIVINGSTON, Justice.

Mrs. Sallie Calfee and L. (Lawrence) C. Calfee filed this bill in the Circuit Court of Pike County, Alabama, in equity, seeking to restrain the respondent, G. B. Grider, from selling, under the power in a mortgage, certain real estate alleged to be the individual property of the complainant, Mrs. Sallie Calfee, and which was being advertised for sale under said power at the time the bill was filed. The bill prays for an accounting as to the separate debts due by complainants to the respondent, "and that if they owe the respondent anything that they be allowed to pay him," and for general relief.

The bill alleges, perhaps imperfectly, that the respondent has charged usurious interest on complainants' accounts, the payment of which is secured by the mortgage. Respondent did not test the bill by demurrer, but filed an answer which he made a cross-bill, and in which he prayed that the court ascertain the amount, including a reasonable attorney's fee, due respondent, and for a foreclosure of the mortgage together with a sale of the real estate to satisfy that amount, if the same was not paid within a reasonable time.

The case was submitted on evidence taken by depositions.

The mortgage here involved was executed by Mrs. Sallie Calfee on April 3, 1936, and was due and payable on September 21, 1936. It recites that it was given to secure the payment of the sum of $900, "together with any other amounts we may owe G. B. Grider before the full payment of this note and mortgage, in money or otherwise." On February 22, 1937, L. C. Calfee and Mrs. Sallie Calfee executed and delivered to respondent a mortgage somewhat similar to the mortgage of April 3, 1936, which recites that it was given to secure the payment of the sum of $1,000 on September 24, 1937. On March 11, 1938, Mrs. Sallie Calfee executed and delivered to respondent another mortgage similar to the one dated February 22, 1937, which recites that it was given to secure the payment of the sum of $1,000 on September 20, 1938.

Although the mortgage of 1936 recites an indebtedness of $900, and the mortgages of 1937 and 1938 recite an indebtedness of $1,000 each, we feel no hesitancy in holding, from the evidence in this case, that these mortgages were given to secure the payment of advances made for the purpose of farming operations, and that the amount secured was the amount actually advanced, rather than the amount recited in the several mortgages, and the mortgages were cumulative in respect to one continuous transaction. All of the mortgages purported to convey all of complainants' crops and other personal property in addition to the real estate of Mrs. Sallie Calfee described therein.

It is not disputed that complainant L. (Lawrence) C. Calfee is the son of complainant Mrs. Sallie Calfee, a widow, and lives with his mother on her farm in Pike County, Alabama.

Complainants insist, first, that a part of the items charged to the account of Mrs. Sallie Calfee were in fact sold to L. C. Calfee and charged to him, and were at a later date charged to her account, without her knowledge or consent. We will not attempt to set out the evidence. Suffice it to say that a careful examina-

tion of the record convinces us that, although some of respondent's ledger sheets bear the name "L. C. Calfee," and some "Mrs. L. C. Calfee," the advances were made to and upon the responsibility of Mrs. Calfee. We are also of the opinion, and hold, that the small advances of cash made to L. C. (Lawrence) Calfee and charged to the account, of Mrs. Calfee were advanced to the son and charged to her with her knowledge and consent.

As above indicated, the transactions here involved cover a period of three years 1936, 1937 and 1938. The respondent claims that the entire balance of $638.01 due on the account is the sole responsibility of Mrs. Sallie Calfee.

One of the issues tried in the lower court was that of usury. Section 8567, Code of 1923, Code 1940, Tit. 9, § 65, provides: "Interest on usurious contracts; recovery back of usury.—All contracts for the payment of interest upon the loan or forbearance of goods, money, things in action, or upon any contract whatever, at a higher rate than is prescribed in this chapter, are usurious, and cannot be enforced either at law or in equity, except as to the principal. Nor shall the borrower of money at a usurious rate of interest ever in any case in law or equity be required to pay more than the principal sum borrowed, and if any interest has been paid the same must be deducted from the principal and judgment rendered for the balance only."

■ The courts will closely scrutinize every suspicious transaction in order to ascertain its real nature. The law is diligent to discern any artifice, device or scheme to cover up usury. In determining whether the contract is tainted with usury, the court will look to the whole transaction. Lewis v. Hickman, 200 Ala. 672, 77 So. 46; Dawson v. Burrus, 73 Ala. 111; Uhlfelder v. Carter's Adm'r, 64 Ala. 527. It will consider the surrounding circumstances, the occurrence at the time of the making of the agreement, and the instruments drawn. The court will look to and construe the transaction by its substance and effect rather than its form, and if, from a consideration of the whole transaction, it becomes apparent that there exists a corrupt intent to violate the usury laws, the plain duty of the court is to inflict the penalty imposed by the statute.

■ In this State the rule is declared as follows: "To constitute the offense of usury, there must be an intent to do something which is in violation of the statute. In accordance with the weight of authority, it is sufficient if this unlawful intent is entertained by the lender alone against whom the usury acts are aimed, and the fact that the borrower does not know that he is contracting for or paying usurious interest is immaterial." Elba Bank & Trust Co. v. Davis et al., 212 Ala. 176, 102 So. 117, 118; Davis v. Elba Bank & Trust Co., 216 Ala. 632, 114 So. 211.

■ The ledger sheets of the respondent showing the account involved are in evidence. Advances were made during each month and charged to the account on the date made. According to respondent's books, the amount due on the account on August 24, 1936, was the sum of $1,411.15. On that day (August 24, 1936) respondent charged the account with the sum of $112.90 as interest. Clearly the charge was eight percent. on $1,411.15 for one year. Various credits were entered on the account during the months of September, October, November and December, and on December 31, 1936, respondent's books indicate a debit balance of $552.05. Advances were made and charged to the account during 1937. On August 27, 1937, respondent's books indicated a debit balance of $980.42, and on that date the respondent charged the account with the sum of $78.43 as interest. On December 15, 1937, respondent's books show a debit balance of $559.-96. Advances were made and charged to the account during the year 1938; and on August 20, 1938, the books of respondent show a debit balance of $1,001.55, and on that date the respondent charged the account with the sum of $80.12 as interest. Interest in the sum of $12.51 was charged to the account on December 28, 1938.

The mortgage here involved, dated April 3, 1936, recites an indebtedness of $900, and provides for the payment of interest at the rate of eight percent. per annum. In truth and in fact the mortgage was given to secure the payment of advances made for the purpose of making a crop during that year: the amount advanced determining the debt secured.

The books of the respondent show a debit balance of $1,411.15 in the account

of Mrs. Calfee on August 24, 1936, at which time a full year's interest at the rate of eight percent. was entered on such balance of the account. As above pointed out, a part of this interest was carried forward in the account. Similar charges were made and entered in 1937 and 1938.

Clearly these interest charges were made and entered with the intent to exact a higher rate of interest than that allowed by law, and rendered the transactions usurious. The obligation cannot be enforced except as to the principal.

The stipulation of the mortgage providing for the payment of attorney's fee was intended to indemnify respondent against any necessity for employing an attorney to foreclose the mortgage or to collect the debt. But it was not intended to secure the payment of a fee for unnecessary services, or services the necessity of which might be brought about by the sole or contributing wrong of respondent, however extensive or laborious such services may be. Compton v. Collins, 197 Ala. 642, 73 So. 334; Soles v. Sheppard, 99 Ill. 616.

The addition of usurious charges to the debt of complainant justified her in refusing to pay it until such charges were eliminated. From the testimony in the cause, we are constrained to hold that the respondent is not entitled to collect attorney's fee.

The decree of the trial court is to the effect that a part of the advances were made to L. (Lawrence) C. Calfee on his sole responsibility. As previously indicated, we think the court was in error in this respect, and hold that the entire indebtedness is that of Mrs. Sallie Calfee.

The trial court found that the item "corn $22.00, and hay, etc., $8.00, H. King" entered on the account as of January 22, 1938, as a debit, was in fact a credit for that amount, and should have been so entered. We are in accord with this finding.

The judgment is reversed and the cause remanded with directions to the lower court to order the register to hold a reference and state the account between the complainant Mrs. Sallie Calfee and respondent, G. B. Grider, in accordance with this opinion. Mrs. Sallie Calfee is

to pay one-half the costs of appeal and the respondent all other costs.

Reversed and remanded with directions.

GARDNER, C. J., and THOMAS and BROWN, JJ., concur.