The **FIRST NATIONAL BANK OF BIR-MINGHAM, Appellant,**

v.

**W. E. DANIEL, Appellee.**

**No. 16138.**

United States Court of Appeals
Fifth Circuit.

Dec. 21, 1956.

Lucien D. Gardner, Forney Johnston, Birmingham, Ala., Cabaniss & Johnston, Birmingham, Ala., of counsel, for appellant.

Clifford J. Durr, Montgomery, Ala., for appellee.

Before HUTCHESON, Chief Judge, and RIVES and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

The Bank, after trial pursuant to remand, Daniel v. First National Bank of Birmingham, 5 Cir., 227 F.2d 353, on rehearing, 5 Cir., 228 F.2d 803, again appeals [1] seeking another review of the basic question of usury penalties, 12 U.S.C.A. §§ 85, 86 and, failing in that, a substantial dollar modification under the two year Statute of Limitations, 12 U.S.C.A. § 86.

■ Re-examination which we may, Messinger v. Anderson, 225 U.S. 436, 32 S.Ct. 739, 56 L.Ed. 1152; Seagraves v. Wallace, 5 Cir., 69 F.2d 163, certiorari denied 293 U.S. 569, 55 S.Ct. 80, 79 L.Ed. 668; Commercial National Bank in Shreveport v. Connolly, 5 Cir., 176 F.2d 1004, but are not required, to make, convinces us that the former decision was correct.

■ We adhere to the underlying basis that, in these circumstances, the sale between the dealer, and Daniel, the purchaser, was at a cash price with the loan of credit, and not, as it might have been under Alabama [2] law, Dykes v. Bottoms, 101 Ala. 390, 13 So. 582, at a "time" price. This leaves then only the Bank's contention that, assuming a usurious transaction between dealer (seller) and purchaser of the vehicle, the Bank "made" no loan or advance to Daniel, for all it did was to buy commercial paper— a Conditional installment Sale Contract —from the dealer at a discount.

---

1. On the former hearing, the case involved both Daniel and Dillard as purchasers. Judgment entered for the plaintiff Dillard on the post-remand trial below was paid and satisfied by the Bank and that specific case is not before us.

2. In the original opinion, 227 F.2d 353, at page 356, we said:

"Appellants [Daniel and Dillard], on the other hand, concede, as they must,

• that a bona fide sale of property on credit at a price which exceeds the cash price by more than the legal rate of interest *does not constitute usury, since the seller* can fix one price for cash and another for credit. Hogg v. Ruffner, 1 Black 115, 66 U.S. 115, 17 L.Ed. 38; Commercial Credit Co. v. Tarwater, 215 Ala. 123, 110 So. 39, 48 A.L.R. 1437; 91 C.J.S., Usury, § 18(a); 55 Am.Jur., Usury, § 21."

For reasons previously pointed out, we look upon these as separate but connected transactions which make the Bank privy to the arrangement by which the dealer was to sell at a cash price, and the money by which to do that was to be supplied for Daniel's use by the Bank.

A re-examination persuades us that there are additional reasons which demonstrate that this was not, as there may be, a routine purchase at a discount of commercial paper from a regular or new customer which might insulate the Bank from pre-existing usury.

Before the tractor was purchased, Daniel, concerned over being obligated for both a tractor and a trailer (covered under an earlier contract also held by the Bank as assignee from the dealer), at the dealer's suggestion went to see the Loan Officer of the Bank. The general impression of this conference was that the Bank suggested that the trailer not be refinanced, that it remain under the existing contract shortly maturing, and that the tractor be covered by a separate arrangement. If, as claimed, the dealer was selling a tractor at a higher price because of credit *it* was extending, it seems highly unlikely that it would send a truck driver-owner off to a bank to see if that institution would, by purchase of the paper, advance funds to *it*. These circumstances add up to the total impression that the Bank, through the expected procedure of a sales contract assigned to it, nominally appearing as a purchase, was outlining the arrangements by which Daniel could expect to get from it the needed funds.

This seems overwhelmingly established by the fact that the Bank, repeatedly insisting that it purchased the Conditional Sales Contract at a 5% discount (10% of face amount, 5% for the 24-months contract period), did no such thing. Demonstrated by the actual differences in percentages, the significant thing is not that arithmetical errors by the Bank are discovered, but that the Bank, to charge what it did, at the rate it did, was, and had to be concerned with the base transaction [3] between dealer and purchaser and ignored altogether the face amount ($13,295.80) of the Conditional Sales Contract.

Daniel paid to (or through) the Bank, we have held, the total ($1425.55) interest. Even if, as the Bank staunchly claims, it retained only $1187.12 for itself, with an unconditional credit of $237.43 as a deposit to the dealer's "Contract Reserve Account", it is plain that neither figure bears any relation [4] what-

---

3. Plaintiff's exhibit 9, while not categorically proved to have been seen by the Bank prior to "discount" by it, in substantially the following tabulated form (the numbers in [ ] are added for convenience of reference) shows how the final Conditional Sales Contract figure was reached:

| | | |
|---|---|---|
| Cost (of tractor): | | $12,452.84 |
| Down Payment: | | |
|   (a) Cash | | |
|   (b) Trade-in | $ 2,200.00 | 2,200.00 |
| | Total | 10,252.84 |
| Deposit to the Credit of Aluminum Trailer Sales/Baggett Transportation Company | | 10,252.84 |
| Insurance | | 1,618.41 |
| Recording Fee   Cash $22.90 | | |
| Interest  6%  months  24 Mo | | 1,424.55 |
| Total Amount of Contract: | | $13,295.80 |

4. On the basis of $13,295.80, the discount would be:
  (a) $1424.55      10.7%(.0535 per year) discount
  (b) $1187.12      8.9%(.04464 per year) discount

soever to the face amount of the contract, $13,295.80 (note 3, supra).

Indeed, uncontradicted evidence [5] from the Bank shows its purpose to "discount" it at 5% but is categorical [6] that it was premised, not on the face amount of the Conditional Sales Contract, but on the base transaction.[7] The Bank, as had the dealer, therefore, used the cash price of the tractor (plus insurance) as the basis for calculating the charge for the use of its credit. The Bank not only knew, it had to know, what the transaction was, either to determine what its compensation (5%) would be, or to enable the dealer to fix a total contract price which would be acceptable as a basis for an expected purchase of the paper.

Add to this the further fact that when, in September 1953, Daniel prepaid the last five installments, the Bank, after con-

siderable discussion over the correct calculation but none over the propriety of the allowance, gave him a discount of $66.40. The Conditional Sales Contract, on the usual form, was for payment of stated installments with no mention of interest. If, as the Bank claims, it was the mere purchase of commercial paper, there was no credit extended by it to Daniel and no rebate of interest due him.

We come then to the question of the correct computation of the penalties.

■ Since the Statute of Limitations begins to run upon the *payment* of interest, McCarthy v. First National Bank of Rapid City, South Dakota, 223 U.S. 493, 32 S.Ct. 240, 56 L.Ed. 523, the Bank insists that for all five payments of monthly contract installments made prior to the two-year period, deduction must be made for such interest at the usurious

5. The Bank issued a "Pass Book Installment Loan Department" in the name of W. E. Daniel as "Borrower" (the term "Dealer Loan" was stamped across its face) and showed the rate (discount) as "6" but the amount as $1187.12 (the other 1%, or $237.43, was for the dealer's reserve account).

The Pass Book showed by separate dates the amount due over the 24-months period, and as payments were made, they were entered and the running balance indicated. The Pass Book stated: "The first principle of savings and thrift is not to pay out a big part of your income for high rate loan service. Whenever you have a financial problem, come first to the First National. Our loan rates are reasonable, our counsel helpful, our service prompt and free from red tape. When you restrict your borrowing to our bank, you enjoy the advantage of keeping all your payments in one place. And you will build up your credit for your future needs.

"Among the many kinds of loans we make are these: Automobile loans * *."

6. Owens, Vice President of the Bank, explained how they arrived at $1187.12: "You see we are figuring 5 per cent ourselves on the actual money *advanced* by us, and that was the $11,871.25, and that is how we arrived at the $1,187." * * * [that is] "5 per cent per year, or 10 per cent * * *"

* * * * *

"Q. Is $1,187.12 5 per cent on $13,295.80?

"A. No.

"Q. Then this 5 per cent * * * was calculated on some different figure from the balance shown to be due under the contract?

"A. That's right.

* * * * *

"Q. Is $1,424.55, is that 6 per cent of this balance stated to be due of $13,-295.80?

* * * * *

"Q. It is not calculated on the balance going to be due under the contract?

"A. No."

* * * * *

"If you will add to the $11,871.25 this $1,424.55, then you get the face amount of the contract. * * *" (Emphasis supplied)

As the Bank was seeking 5 per cent compensation only with respect to all monies to be "advanced" by it, there is a strong indication that the credit of $237.43 to the dealer's "Reserve Account" was looked upon in a different light—perhaps merely as an offsetting debit and credit since if it paid, and when it paid, to the dealer, the Bank would get it back from Daniel.

7. See note 3, supra:

| | | |
|---|---|---|
| Cash price of tractor | | $10,252.84 |
| Insurance | | 1,618.41 |
| Total Cost | | $11,871.25 |
| Discount 10% (5% 2 years) | | $ 1,187.12 |

rate (11.18% or 9.32 depending upon whether the Bank is deemed to have "discounted" at 6 or 5 per cent). Since the Bank's brief, with commendable candor, recognizes that, "It is the general rule that in the absence of statute or agreement of the parties, partial payments made upon a usurious contract are applied in payment of principal until the principal is fully repaid * * *," see also 91 C.J.S., Usury, § 92 a; 55 Am.Jur., Usury § 151, it relies on Section 64, Code [8] of Alabama, to reconstruct the application between interest and principal.

Presumably because the Alabama Code, §§ 65, 66, also provides that usurious contracts "cannot be enforced either at law or in equity, except as to the principal" and "if any interest has been paid the same must be deducted from the principal and judgment rendered for the balance only," see Nicrosi v. Walker, 139 Ala. 369, 37 So. 97, cf. Jones v. Meriwether, 203 Ala. 155, 82 So. 185; and Alabama Cash Credit Corp. v. Bartlett, 225 Ala. 641, 144 So. 808, the District Court thought that since no interest would be legally recoverable, the requirement of Section 64 of "interest due" could not apply and hence the section is "without application to usurious payments of interest."

While there is much to support this view which would prevent the usurer, by the fiction of constructive application substantially to reduce the penalties, we need not determine this. For in this case the contract did not specify any amount, in percentage or money, for interest, nor did it call for the payment of interest at all. And, the record is quite clear, that at no stage did the Bank or the parties treat it as though interest was being collected and handled as such. The statute, intended, we believe, to cover primarily the case of partial payments on contracts calling for payment of principal and some specified or described interest in which, in the partial payment,

no separation is indicated, would not apply under these circumstances.

By operation of the general rule, the principal of this contract ($11,871.25) was not fully paid until September 1953. The remaining payments representing the "interest" were well within the two-year statutory period.

However, as to Count 1 for the trailer, it is undisputed that the only sums of any character paid within the two-year period prior to suit was $310.76. The District Court allowed the recovery of twice $495.88, the total interest paid. On no theory was more than $310.76 paid within the statutory period, and the judgment must be accordingly modified to reduce the award to twice that sum, $621.52.

Modified, and as modified affirmed.

---

**8.** Title 9, Alabama Code of 1940, Section 64:
"When partial payments are made, the interest due is first to be paid, and the balance applied to the payment of the principal."