**UNITED STATES of America,**
**Appellant,**

**v.**

**COMMERICIAL CREDIT CORPORA-TION, Claimant of One 1953 Model Buick Sedan Automobile, Motor No. V676217, Appellee.**

**No. 16237.**

United States Court of Appeals
Fifth Circuit.

Feb. 21, 1957.

58

Thomas M. Haas, Asst. U. S. Atty., Ralph Kennamer, U. S. Atty., Mobile, Ala., for appellant.

Paul W. Brunson, Mobile, Ala., for appellee.

Before RIVES, TUTTLE and BROWN, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal by the United States from a judgment of the district court forfeiting the defendant automobile to appellant, but remitting to the intervening claimant, here the appellee, a claim or interest therein of $1,588.48. Upon

agreed facts the only issue is whether the amount remitted should not be reduced to $1,211.56 by disallowing the claim of the appellee, the assignee of a conditional sales contract for said automobile, to the extent that it represents unaccrued "interest" and insurance premiums included in the contract price.

The automobile in question was purchased by a Mr. Otis Floyd on September 13, 1955, from the Mobile Penn Motor Company, in Mobile, Alabama, on a conditional sales contract which was assigned to appellee on the same day. Two payments had been made on the contract when the car was seized by officers of the State of Alabama on October 6, 1955, and released on the next day to agents of the Alcohol and Tobacco Tax Division of the United States Treasury Depart-

ment's Internal Revenue Service because of use in violation of the laws respecting intoxicating liquors. Appellee intervened in the consequent forfeiture action and the car was released to it on bond. On an agreed statement of facts the court determined that the car be forfeited to the United States but that under the provisions of 18 U.S.C.A. § 3617 the forfeiture should be remitted to the appellee to the extent of the entire unpaid balance on the conditional sales contract, and appellee was permitted to retain the car and to obtain release of the bond upon payment into court of the difference between the "appraised" value of the car and the amount of the remittance.

The pertinent figures are as follows:

| | | |
|---|---|---|
| Cash Selling Price (Delivered Price) | | $1,795.00 |
| Less: Cash Down Payment | $ 50.00 | |
| Less: Trade In | 395.00 | 445.00 |
| Unpaid Balance | | $1,350.00 |
| Plus: Insurance and Other Benefits | $153.00 | |
| Plus: Recording Cost | 5.00 | |
| Plus: Finance Charge | 223.92 | 381.92 |
| Total Time Balance [1] | | $1,731.92 |
| Payments made before seizure (two) | | 143.44 |
| Claim Allowed by District Court | | $1,588.48 |
| Appraised Value of Car [2] (and amount of release bond) | | 1,630.00 |
| Payment Required of Appellee to Cancel Bond | | $ 41.52 |

[1]. The breakdown to this point was included in the Agreed Statement of Facts and was evidently taken from the "Record of Transaction" attached to the conditional sales contract with the following note:
"Furnished in compliance with Regulation "W" of Federal Reserve Board as to passenger automobiles, and with Trade Practice Rules of Federal Trade Commission as to all motor vehicles.—Not Part of Contract—Not To Be Recorded—Cut Off Before Recording."

[2]. This value was apparently set by the Internal Revenue Service as the value at the time of seizure, although there is no evidence to this effect, and appellee was required to post a bond to that amount though it allegedly disputed that figure. By leave of court it later introduced several affidavits from dealers that the reasonable market value (on February 28, 1956) of the car was $1,250.00, but in its order the court merely recited that "the vehicle herein was appraised at the value of $1,630.00 at the time of seizure * * *."

By the stipulation in the court below the parties sought to narrow the issue to a question whether the items of "Insurance and Other Benefits" and "Finance Charges," totalling $376.92, were properly included in the amount secured by the lien. We do not think the record before the court below makes it possible for us to resolve this question.

The only evidence of the value of the automobile is two affidavits submitted by the claimant stating the value to be not in excess of $1250 on February 28, 1956 (four and one-half months after the seizure). Then there is the court's statement that the vehicle "was appraised at the value of $1630 at the time of seizure." This could only have been based on the stipulation that "a bond in the sum of $1630.00 was filed," a fact that is no evidence of the value of the seized automobile.

█ With no proof of value, and in view of the concession by the Government that the claimant was entitled to a claim for $1211.56, it is evident that the court's judgment awarding the Government $41.52 satisfied its claim to the extent of any solid proof of value of the automobile.[3]

Appellee filed no cross appeal complaining of the award of $41.52 to the Government; thus there is no need for this court to resolve the question sought to be raised here even as to the difference between $1211.56 and $1250.00

█ Evidently a case with relatively small dollar amounts such as this is litigated as a test case. Of course, the fact that it is presented as such does not affect the right of the parties to have this Court pass on any legal questions that are properly before it, but the desire of the parties to have an opinion on a particular type of contract or course of business dealing does not justify the court in giving an opinion when the record neither justifies it nor gives a solid factual basis to make it meaningful.

Even were it not for the lack of proof of value, the record here lacks such adequate factual basis to permit the court to hold that the course of dealing that here resulted in the payment by the purchaser of "Finance Charges" and "Insurance and Other Benefits," in addition to the "Cash Selling Price," to make up what is called a "Time Price" for the privilege of paying for the car over a period of 18 months, amounted to a contract to pay interest. We thus can not conclude from this record that the lien owned by the claimant did not secure it for the payment of that part of the finance charges and other benefits that the Government claims represents unearned interest and insurance premiums.

█ In stating that the Government's contention in this respect must be rejected we do so upon recognition of the "time price" doctrine which prevails in Alabama, the State whose law created the lien appellee is asserting. This doctrine provides, in effect, that a seller may set two alternative prices for a commodity: a "cash price" and a "time price" with payments of the latter to be made later or over a period of time, and the difference in amount between these two prices is not to be considered "interest" (at least for the purposes of the usury laws.). Commercial Credit Co. v. Tarwater, 215 Ala. 123, 110 So. 39, 48 A.L.R. 1437; Commercial Credit Co. v. Parks, 215 Ala. 648, 112 So. 237.

This Court has recently held in Daniel v. First National Bank of Birmingham, 5 Cir., 227 F.2d 353, rehearing denied with opinion, 5 Cir., 228 F.2d 803, second appeal, 5 Cir., 239 F.2d 801, that the words "time price," however, work no magic in giving a different substance to a transaction merely because of their use in the contract. Under the principles of that case the true nature of an auto financing arrangement can be inquired into if it becomes legally significant for the court to determine whether

---

3. The proof as to value several months after seizure is of course not satisfactory evidence of the value as of the critical date, but it is the only evidence on which the trial court could base any judgment of value.

so-called "finance charges" and "other charges" that may represent compensation for the use of money are really interest or are merely a part of a time purchase price. Because of the meagerness of the record in this case, however, we do not, indeed we can not, construe this written contract of sale as anything other than what it purports on its face to be, a contract to pay the full amount of the time purchase price.[4]

No error prejudicial to the appellant having been committed by the trial court, the judgment is

Affirmed.

4. For the nature of the proof that the trial court may consider in determining the true nature of such an automobile financing agreement see Daniel v. First National Bank of Birmingham, supra.